441 So.2d 1227 (1983)
STATE of Louisiana
v.
Joseph CLAY.
No. 82 KA 1089.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
Rehearing Denied December 13, 1983.
*1229 Dixie C. Brown, Asst. Dist. Atty., Houma, for State.
Warren Daigle and Gary Blaize, Attys., Houma, for Joseph Clay.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
Defendant, Joseph Clay, was indicted for second degree murder, La.R.S. 14:30.1, in the stabbing death of Lloyd Gosa. After a trial by jury, defendant was convicted as charged, and he was sentenced to life in prisonment, without the benefit of probation, parole or suspension of sentence. He has appealed, alleging ten assignments of error.

FACTS
On December 4th, 1980, defendant and a female companion, Barbara Jones, engaged in a fight with Lloyd Gosa, in which the victim suffered a fatal stab wound. According to the testimony of Jones, earlier that afternoon Gosa attempted to rape her in the apartment she shared with defendant. After Jones reported the attack to defendant, he engaged in a fight with the victim, during which defendant attempted to stab Gosa. This fight was broken up without serious injury. Later that evening, when defendant and Jones spotted the victim walking along a street, another fight ensued. Defendant and Jones were joined by Julius Moore. Clay and Moore used knives in the fray; all three assailants kicked the victim and hit him with glass bottles. The victim was stabbed once in the back and died a short time later in a local hospital. After the stabbing, the three assailants fled the area. Later, defendant, Jones, and another companion went to the hospital to determine if the victim had been taken there and the status of his condition. A security guard at the hospital obtained their names and addresses from defendant and his male companion. Defendant was arrested the next day, and a grand jury later indicted Clay, Jones and Moore for second degree murder.

ASSIGNMENTS OF ERROR
Defendant has assigned the following errors:
1. The trial court erred in replacing a selected juror, Mrs. Bertha Domangue, with an alternate, Mrs. DiMarco, without having an adversary hearing as to the reasons for said replacement.
2. The trial court erred in failing to grant a mistrial on defendant's motion.
3. The trial court erred in overruling defendant's objection to the question proposed to the witness Lelia Ann Williams by the State concerning the use of the word "stab."
4. The trial court erred in overruling the defendant's objection to the State's question as to whether Constance Harvey understood the Judge's instructions as to sequestration.
5. The trial court erred in sustaining the state's objection to defendant's questions about the police officers investigation involving Jerry Washington.
6. The trial court erred in sustaining the state's objection proposed by the defendant to Barbara Jones pertaining to things said by Julius Moore, the deceased herein, which formed a part of the res gestae.
7. The trial court erred in sustaining the state's objection to questions propounded to Julius Moore as to statements made by the deceased herein which were part of the res gestae.
8. The trial court erred in sustaining the state's objection to the defendant's testifying *1230 to a conversation he had with his landlord.
9. The trial court erred in sustaining the state's objection to the defendant's testifying to a conversation he had with his landlord.
10. The verdict of the jury is contrary to the law and the evidence.

ASSIGNMENT OF ERROR NO. 1
As assignment of error number one, defendant claims that the trial court erred in replacing a selected juror, Mrs. Bertha Domangue, with an alternate, Mrs. DiMarco, without conducting a hearing as to the reasons for the discharge.
At the beginning of the second day of trial, the trial judge stated:
"It has been reported that one of the jurors, Number 43, Bertha Domangue, has had some accident or problem in her family that requires her presence and she will be unable to attend the trial this morning. For that reason, since we have an alternate, Number 25, Mrs. Dimarco, we will replace Mrs. Domangue with Mrs. Dimarco and proceed with trial."
Defense counsel then objected because the nature of Mrs. Domangue's problem was undisclosed.
La.Code Crim.P. art. 789 provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified. Once a jury has been selected and sworn the defendant has a right to have his case decided by the particular jurors selected to serve. State v. Cass, 356 So.2d 396 (La. 1978). A juror may not be discharged unless there is legal cause i.e., death, illness or any other cause which renders a juror unable or disqualified to perform, and an absence of this legal cause will lead to reversal. State v. Willie, 130 La. 454, 58 So. 147 (1912).
La.Code Crim.P. art. 831 lists the instances when a defendant charged with a felony shall be present. One instance when his presence is required is "... at the calling, examination, challenging, impanelling and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror...".
The Supreme Court has held that a trial judge conducting proceedings outside of a defendant's presence to determine a juror's competency to serve has the "... effect of vitiating the entire proceedings...". State v. White, 244 La. 585, 153 So.2d 401, 408 (1963); State v. Copeland, 419 So.2d 899 (La.1982). Also, reversal will be ordered where a trial judge summarily discharges a juror for inability to perform without allowing the defendant an opportunity to explore that inability on the record (at least under similar circumstances as those found in State v. Cass, supra).
We believe that the facts of the instant case are distinguishable from those in the above-cited cases and that the differences mandate a different conclusion.
In State v. White, supra, the trial judge, during a recess, conducted a hearing in his chambers outside of the defendant's presence after having been told by a juror that he (the juror) thought he was disqualified. After the recess the judge announced that the juror was disqualified and would be replaced by an alternate and that defense counsel would not be allowed to question the excused juror as to the reason for his disqualification. A reversal was ordered.
In State v. Copeland, supra, the trial judge examined two jurors outside the defendant's presence either in the jury room or in a motel room where the jury was sequestered. Both jurors expressed fears that they might be unable to continue serving and both were told by the trial judge (erroneously) that the consequence of their dismissal would be a mistrial. Both remained jurors. The Supreme Court found that there was no difference between the hearing in the judge's chambers in White and the discussions in that case. The trial judge had determined outside the presence of the defendant that the two jurors were capable of continuing to serve, and the court again reversed the conviction.
In State v. Cass, supra, the trial judge immediately dismissed a juror in open court *1231 because he observed the juror apparently sleeping for two to four minutes while a state's witness was being cross-examined. The Supreme Court stated that the juror's behavior did not constitute legal cause to discharge him. Furthermore, the trial court was in error for not allowing the defendant and the state to examine the juror's inability to perform.
Here, the juror telephoned the trial court on the morning of the second day of trial, saying she was unable to attend trial because of "... some accident or a problem in her family that requires her presence...". The judge then announced this in open court, in the presence of defendant, and replaced the juror with the alternate. Where this case differs materially from the above cases is the discharged juror's unavailability for questioning as to her inability or incompetency to serve. In White, Copeland and Cass the jurors could have been questioned in front of the defendants, as all were present and available. The trial courts were in error in those cases for not taking the simple step of allowing the defendants to examine the jurors, which could have easily been done. The trial judge here reacted in a prudent manner in replacing the juror. He could have done little else except to direct the sheriff to round up Mrs. Domangue for questioning, which would only have been proper had he not believed she had a pressing family problem or accident which required her presence.
The defendant's right to have the original twelve jurors selected decide his fate and his right to be present at certain stages of the proceedings are not absolute. Ample cause was present to discharge the juror, and defendant's absence at the ex parte "hearing" was unavoidable.
We, therefore, find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In assignment of error number two, defendant argues that the trial court erred in failing to grant his motion for a mistrial based on prejudicial conduct by a witness.
The State called Lelia Ann Williams, a seventeen year old female who had witnessed the incident. Although she had indicated her willingness to cooperate with the prosecution, Williams refused to answer any questions about what she saw that night. After several futile attempts to question the witness, the jurors were removed from the courtroom and the State requested that she be declared a hostile witness and the statement she had given earlier be allowed into evidence. At that time, the defense objected and moved for a mistrial on the grounds that Williams' actions, by indicating she was afraid to testify, had so prejudiced the proceedings that it would be impossible for defendant to obtain a fair trial. The court refused to grant a mistrial because "the mere fact that she has been silent is not prejudicial to the defendant, and may even be to his benefit for all I know."
After several more futile attempts to elicit answers from the witness, the court held a bench conference with both counsel, after which the sister of Julius Moore was removed from the courtroom. The witness then testified freely.
Mistrial is a drastic remedy, which is warranted only if substantial prejudice resulted which would deprive defendant of a fair trial, and the ruling of the trial court will not be disturbed absent an abuse of discretion. State v. Narcisse, 426 So.2d 118 (La.1983) and State v. Tribbett, 415 So.2d 182 (La.1982). Defendant does not substantiate any allegation of prejudice, nor did he request that the jury be admonished. We do not find an abuse of discretion.

ASSIGNMENTS OF ERROR NO. 3 AND 4
In these assignments, defendant submits the court erred in overruling certain objections by defendant. In assignment of error number three, defendant argues that the trial court erred in overruling his objection to the questioning of Williams by the State concerning what she meant by using the word "stab." In assignment number four, defendant argues that the court erred in overruling his objection to the questioning of one of the witnesses relative to her *1232 understanding of the court's sequestration order.
On cross examination, Williams testified that she saw the victim stabbed once during the fight. Defense counsel then questioned her about a prior statement where she claimed to have seen the victim stabbed several times. On re-direct, the state attempted to have the witness clarify what she was testifying to having seen. The following exchange took place:
Q. When you use the word "stab" do you mean swinging a knife?
A. Yes ma'am.
Defense counsel objected to this exchange and requested that it be stricken from the record because "stab" has a common meaning, and therefore the State was leading the witness. Although the objection was overruled the State rephrased the question eliciting the same response:
Q. What do you mean when you say stabbed?
A. Swinging and swinging a knife.
Defendant argues that it was improper for the State to attempt to have the witness give a specific answer; he argues that this testimony was crucial because only one stab wound was actually inflicted on the victim.
The obvious implication of these facts would be that, since the witness at one time testified that she saw the victim stabbed once, and on another occasion testified that the victim was stabbed several times her credibility was questionable. This implication was clearly presented to the jury, and defendant therefore accomplished his purpose. Under the circumstances, even assuming possible error in the ruling of the trial judge, the error was harmless. La.Code Crim.P. art. 921.
In assignment of error number four defendant argues that the trial court erred in overruling his objection to the State's questioning of Constance Harvey to determine whether she understood the trial court's instruction on the sequestration.
On cross examination Harvey revealed that during the trial she had spoken to Leila Williams about the events of the night of the stabbing. Defendant closely questioned her about this violation of the sequestration order. On redirect examination, the state asked Harvey if she had intentionally broken the order of the Court, or if she did not understand it. Defendant objected to the question as being self-serving, but the State argued it was permissible rehabilitation because defendant originally explored the issue on the cross-examination. The court permitted the witness to answer the question, and she responded that she had not understood the order.
Defendant clearly intended to impeach Harvey's credibility by showing that her testimony was made after possible collusion with another witness. This evidence was presented to the jury. No substantial rights of defendant were prejudiced. La.Code Crim.P. art. 921.
Defendant also argues that the court should have ordered a mistrial sua sponte under La.Code Crim.P. art. 775(3). This article provides as follows:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
. . . . . .
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.
Although defendant does not specify what constituted the "legal defect," he seems to argue that a mistrial should have been declared because evidence that the sequestration order had been violated was presented. A defect in the sequestration order does not require reversal, absent a showing that any testimony was changed due to witness tampering or collusion. State v. Tauzier, 397 So.2d 494 (La.1981). The witness stated that she was testifying on the stand from her memory refreshed about events she saw at the time. We find no error such as to render a legal defect in the proceedings.

ASSIGNMENTS OF ERROR NOS. 5, 6, 7, 8 AND 9
In these assignments of error, defendant argues that reversible error was committed *1233 by the trial court in its rulings on several objections. Each assigned error relates to an objection raised by the state which the court sustained.
Assignment of error number five relates to the testimony of Aurestile Scott, the officer of the Houma Police Department who conducted the investigation into the stabbing. Scott indicated that he had been advised at the scene of the stabbing that a complaint had been filed earlier regarding the victim, and he had been advised at that time that the victim's name was Jerry Washington. Scott later testified again that he had spoken with the two other officers who had conducted the investigation involving "Jerry Washington," but the state objected to any further testimony regarding this investigation as hearsay evidence. The court sustained the objection, noting that there was no clear relevance for the testimony.
We find no error in the court's ruling. The witness knew of the prior investigation through facts related to him by others. His testimony as to those facts would clearly be hearsay. Moreover, we agree with the trial court that the prior investigation had no clear relevancy to the instant proceedings. This assignment of error has no merit.
In assignments of error six and seven, defendant argues that the court erred in sustaining objections to the testimony of Barbara Jones. Jones was prepared to testify to remarks made by Julius Moore and the victim immediately prior to the stabbing. The state objected to the testimony because of its hearsay nature. Defendant argues that it should have been allowed to be presented as part of the res gestae. The court sustained the objection based on the fact that it was made too far from the actual altercation to be a part of the res gestae. We do not agree that the statements were too far removed in time to actually comprise a part of the res gestae. Jones' testimony indicates clearly that the statements were made immediately prior to the altercation, and therefore did comprise a part of the res gestae. We note, however, that Jones had already indicated that she could not hear what Moore was saying. She reiterated this point on further questioning. We find no prejudice to defendant because of this ruling.
In assignment of error number seven, defendant argues that the court erred by refusing to allow Julius Moore to testify as to statements made by the victim as a part of the res gestae. Moore testified that the victim was behind him as he walked along the street and stated that, "I guess he was drunk, the way he was talking." Defendant then asked Moore how the victim was talking, and the state objected to the question. The court sustained the objection to the question as calling for a hearsay response.
We note that the question did not call for an answer describing what the victim has said but rather the way the victim was speaking; this testimony obviously would not be elicited for the proof of what was said and would not have constituted hearsay. However, defendant does not allege any prejudice from this ruling. Injury, as well as error, must be alleged and shown to justify reversal of a conviction because of the exclusion of evidence. State v. Nahoum, 172 La. 83, 133 So. 370 (1931). Accordingly, this assignment does not merit reversal.
In assignment of error number eight, defendant alleges that the trial court erred in sustaining the state's objection to testimony by defendant relating to a conversation he had with a friend, Donald James, earlier in the afternoon.[1] Defendant took the stand on his own behalf, and when asked to relate the events of that evening he began to testify to statements made by James to him prior to the stabbing. The State objected to the hearsay testimony, and the court thereafter limited the scope of the conversation to statements which defendant made to James. Defendant objected, based on his *1234 right to explain what happened, since the same hearsay statements were contained in the confession defendant made after his arrest. The objection was overruled. Soon afterward, defendant began to relate a statement made by defendant's landlord to him. The state objected to the hearsay, which objection was sustained, and defendant objected to the court's ruling on the same basis he advanced relative to the testimony of James.
Hearsay evidence is testimony, in court or written evidence, of an out-of-court statement offered as an assertion to show the truth of the matters asserted therein. State v. Farrar, 374 So.2d 1204 (La.1979). It is inadmissible, except as provided by law. La.R.S. 15:434. The legislature has not provided an exception to this rule which would permit the introduction of hearsay specifically to explain events related in a confession when the hearsay is not otherwise admissible as an exception to the hearsay exclusion rule. See State v. Farrar, supra. A confession, inculpatory statement or declaration must be used in its entirety so that the person affected thereby may have the benefit of any exculpation that the whole statement may afford. La. R.S. 15:450. The statements sought to be introduced by defendant were included in the confession and thus were presented to the jury. We find no error in the denial of the admissibility of these statements.

ASSIGNMENT OF ERROR NO. 10
In assignment of error number ten, defendant argues that the verdict of the jury is contrary to the law and the evidence. Defendant's argument is based on the fact that Julius Moore, having already pled guilty to manslaughter, testified at defendant's trial that he had stabbed the victim, and that since the evidence established that the victim was stabbed only once, the verdict is not supported by the evidence.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. La.R.S. 14:24. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. den. 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981). The evidence indicated that both defendant and Moore wielded knives in the fray. Even if Moore were the individual who stabbed the victim, the fact that the actual perpetrator pled guilty to manslaughter did not prevent defendant from being charged as a principal. See State v. McAllister, 366 So.2d 1340 (La. 1978). This assignment of error has no merit.
Therefore, the conviction and sentences are affirmed.
AFFIRMED.
NOTES
[1] Both defendant and the State had subpoenaed James, but the Sheriff was unable to serve him. The parties entered into a stipulation as to what James would have testified to, which was introduced by the State.