500 So.2d 811 (1986)
STATE of Louisiana
v.
Larry WILLIAMS, A/K/A Larry W. Williams.
No. KA 86 0523.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
*812 John Wayne Jewell and Richard J. Ward, Jr., Asst. Dist. Attys., New Roads, for plaintiff and appellee.
Thomas A. Nelson and C. Jerome D'Aquila, Indigent Defender Office, New Roads, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., LANIER and ALFORD, JJ.
ALFORD, Judge.
After being indicted by a grand jury, Larry Williams, a/k/a Larry W. Williams, was convicted by a jury for second degree murder, a violation of LSA-R.S. 14:30.1. The trial court sentenced him to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. *813 On appeal, the defendant urges six assignments of error.

FACTS
On the night of April 16, 1985, sixteen-year-old Juanita Johnson fell asleep on the sofa in her house in Morganza, Louisiana. Asleep in the bed in the same room were her mother, Lillie Mae Holliday, her two younger brothers and a younger sister. During the middle of the night, an unidentified noise awakened her. Juanita turned her head and saw defendant standing by the bed, pointing a pistol down at her mother's head. Ms. Holliday was lying on the bed with blood pouring from two bullet wounds in her forehead. Defendant then pointed the gun at Juanita and forced her to go with him out of the back door. She escaped from him and ran, screaming, to her aunt's house next door. Rebecca Johnson, the victim's sister, opened her front door and saw her niece and defendant on the porch. She saw defendant strike Juanita on the head with a pistol. He subsequently ran away between the two houses, toward the levee.
Joanne Turner, defendant's mother, also lived near Ms. Holliday. She was awakened that night by her daughter, who had heard the disturbance outside. She went to the victim's house, after which she telephoned for an ambulance.
The police reported to the scene at approximately 1:00 a.m., on the morning of August 17, 1985. Pursuant to their investigation, an arrest warrant was issued for Mr. Williams. After a search, defendant was apprehended the following night in New Orleans.

ASSIGNMENT OF ERROR NO. 1
By means of this assignment, defendant urges that the trial court erred in substituting an alternate juror for a juror who arrived late, but prior to the beginning of trial. He argues that because the juror did, in fact, enter the courtroom before the state commenced its opening statement, she was able to perform and the record is void of any evidence indicating that she was disqualified.
After voir dire examination of prospective jurors, twelve jurors and two alternates were selected and sworn. The court then recessed until 10:30 a.m. the following morning. That morning, when the matter continued, the court conducted a roll call of the jury and was informed that a juror, Janice M. Hatch, was not present. The bailiff telephoned her house and there was no answer. At 10:40 a.m., when the juror was still absent, the court ordered the first alternate to replace Ms. Hatch and further ordered that Ms. Hatch be placed in jail upon her arrival. Defense counsel expressed his desire to make some motions or be afforded the chance to do some research, stating that he was unsure whether an alternate could be appointed simply because a juror fails to appear. The state requested that the court recess the jury, which motion the court denied. Defense counsel objected to this decision and moved for a mistrial, which motion was also denied.
At this point, the trial proceeded with the court's order for the sequestration of all witnesses. While the roll of the witnesses was being called, the absent juror, Ms. Hatch, entered the courtroom. When the court ordered her jailed for arriving late without calling anyone, she replied that she had car trouble and was unable to get to a telephone. The court proceeded with the alternate, stating that the trial had started already. The clerk then read the indictment and defendant's plea on arraignment to the jury.
Louisiana Code of Criminal Procedure Article 789 provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified prior to the time the jury retires to consider its verdict. Once a jury has been selected and sworn, the defendant has a right to have his case decided by the particular jurors selected to serve. State v. Cass, 356 So.2d 396 (La.1977). A juror may not be discharged unless he is found incompetent to serve because of *814 death, illness, or any other cause which renders a juror unable or disqualified to perform his duty. 356 So.2d at 397, 398.
In Cass, 356 So.2d at 397, 398, the trial judge summarily dismissed a juror in open court because he observed the juror apparently sleeping for two to four minutes while a state's witness was being cross-examined. The Louisiana Supreme Court ordered a reversal, stating that the juror's behavior did not constitute legal cause to discharge him. Furthermore, the trial court was in error for not allowing the defendant an opportunity to explore, on the record, the juror's inability to perform.
In State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984), the trial court discharged a juror who telephoned on the morning of the second day of trial, saying she was unable to attend trial because some accident or problem in her family required her presence. On appeal, this Court distinguished the case from Cass based on the material fact that in Clay the discharged juror was unavailable for questioning as to her inability or incompetency to serve. In Cass, the juror could have been questioned in front of the defendant, as the juror was present and available. The trial court erred in Cass in not taking the simple step of allowing the defendant to examine the juror, which easily could have been done. This Court found that the trial judge in Clay reacted in a prudent manner in replacing the juror.
Here, the juror was absent, as she was late for court. It is immaterial that she subsequently arrived for duty. At the time the trial judge was called upon to make a decision whether to replace her with the alternate, her whereabouts and reason for her absence were unknown. As in Clay, the discharged juror was unavailable for questioning as to her inability or incompetency to serve.
Consistent with Clay, 441 So.2d at 1230, and for the reasons stated above, we determine that the trial judge herein reacted in a prudent manner in replacing the juror. A court has the duty to require that criminal proceedings shall be conducted in an orderly and expeditious manner. A juror's failure to attend court interferes with the orderly administration of justice. See La.C.Cr.P. arts. 17, 20, 21.
A defendant's right to have the original twelve jurors selected decide his fate is not absolute. Ample cause was present to discharge the juror. Clay, 441 So.2d at 1231.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Defendant contends the trial court erred in not granting a mistrial when the prosecutor made reference in his opening statement to the commission of other crimes by defendant, in violation of La.C.Cr.P. art. 770.
In his opening statement, the Assistant District Attorney stated:
(T)he victim, Lillie Mae Holliday, had retired for the night in her home in Morganza with her family. During the course of that night, while she was sleeping, the Defendant, came into the house, as an intruder, without permission  He further stated:
Right after he shot her, we're going to prove that he went over to the bed that her sixteen (16) year old daughter was sleeping in or the couch that she was sleeping in; took the daughter at gunpoint; left the home. The daughter broke away 
Defense counsel objected and moved for a mistrial after each alleged reference to another crime for which defendant was not on trial, namely, unauthorized entry into an inhabited dwelling and kidnapping. Out of the presence of the jury, arguments by all counsel were heard, whereupon the trial court overruled the objections and denied both of defense counsel's motions for a mistrial.
La.C.Cr.P. art. 770 provides in part:

*815 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the ... district attorney ... refers directly or indirectly to:
* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
This prohibition against references to inadmissible evidence of other crimes does not include evidence of words, or actions which form a part of the res gestae, which is always admissible. La.R.S. 15:447; State v. Brown, 428 So.2d 438 (La.1983); State v. Brown, 340 So.2d 1306 (La.1976), writ denied, 366 So.2d 564 (La.1979). To constitute res gestae, those actions or words must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. La.R.S. 15:448.
In the present case, unauthorized entry into the victim's home and the subsequent abduction of the victim's daughter at gunpoint can fairly be said to constitute one continuous transaction with the murder of Ms. Holliday. One occurred shortly before and the other immediately after the murder. Since evidence as to these other incidents was admissible as part of the res gestae, the prosecutor could properly refer to them in his opening statement. This assignment accordingly lacks merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant alleges that the trial court erred in allowing the introduction of a photograph of the murder victim into evidence. Defendant argues that the photograph is gruesome and that its prejudicial effect outweighs any probative value.
Post-mortem photographs of a murder victim are generally admissible to prove corpus delecti; to corroborate other evidence establishing the cause of death; to establish the location, severity and number of wounds; and to provide positive identification of the victim. The admission of gruesome photographs will not be overturned unless it is clear that their prejudicial effect outweighed their probative value. State v. Ward, 483 So.2d 578 (La. 1986); State v. Barberousse, 480 So.2d 273 (La.1985).
The photograph in question depicts a close-up view of the decedent's face. The court found the photograph relevant to establish the exact location of the wounds. We think the probative value of the picture outweighed any prejudicial effect, and we find no error on the part of the trial court in admitting the photograph into evidence. Therefore, we reject this assignment of error.

ASSIGNMENT OF ERROR NO. 5
Defendant argues in this assignment that the trial court erred when it commented on the evidence. He contends that a mistrial should have been granted as a result of the court's comment.
During the trial, the victim's sister was called as a witness by the state. On crossexamination, defense counsel repeated a statement the witness had made. The prosecutor objected, claiming that was not what the witness had said. The court then stated to defense counsel, "You're misleading  misleading." Defense counsel immediately objected and moved for a mistrial. The motion was denied.
Under La.C.Cr.P. art. 772, the judge is prohibited, in the presence of the jury, from commenting upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. However, the Louisiana Supreme Court has consistently held that the prohibition of article 772 does not apply to the trial court's reasons for rulings on objections, provided the remarks are not unfair or prejudicial to defendant. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Williams, 397 *816 So.2d 1287 (La.1981); State v. Motton, 395 So.2d 1337 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); State v. Toomer, 395 So.2d 1320 (La.1981).
The court's remark in the instant case was no more than an indication that it was sustaining the state's objection to defense counsel misquoting the witness. The remark was neither unfair nor prejudicial. It clearly did not raise an inference as to defendant's innocence or guilt, or express or imply the court's opinion with regard to a material issue. See State v. Williams, 375 So.2d 1379 (La.1979).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
In this assignment of error, defendant contends that the verdict of guilty of second degree murder is contrary to the law and evidence. This assignment is based on defendant's contention that the evidence in this case was circumstantial and was not sufficient to exclude every reasonable hypothesis of innocence.
The proper procedure for raising this issue is by motion for a post verdict judgment of acquittal. La.C.Cr.P. art. 821. Counsel for defendant did not file such a motion in this case. Despite the fact that defendant failed to employ the proper procedure, insufficiency of the evidence will be considered since the matter was raised by formal assignment of error. State v. Washington, 421 So.2d 887 (La. 1982).
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The standard has been codified in La.C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La.1986).
We believe it is questionable whether the evidence presented at trial was entirely circumstantial. Regardless, we find the evidence sufficient to support the verdict.
In this case, Juanita Johnson testified that something awakened her in the middle of the night. She turned and saw defendant standing over her mother, pointing a gun at her mother's head. She saw blood pouring from the victim's head. Defendant then forced her to go with him at gunpoint. She broke away and ran, screaming, to her aunt's house next door. Hearing Juanita's screams and knocking on her porch, Rebecca Johnson opened her door and saw defendant strike her niece on the head with a pistol. Rebecca Johnson testified that defendant stated he only had two bullets, but if he had more, he would have used them on Juanita and the children. Doctor Suarez testified that Lillie Mae Holliday died from two gunshot wounds to the forehead. The bullet that caused death was fired from close range (less than a foot).
The murder in question occurred in Morganza, Louisiana, some time during the night of April 16, 1985. Detective Jennings David testified that defendant was apprehended in the Bourbon Street area of New Orleans on Thursday night, April 18, 1985. Flight comprehends, among other things, the act of leaving the jurisdiction of the scene of the crime. State v. Davies, 350 So.2d 586 (La.1977). While an individual's *817 flight does not in and of itself indicate any guilt, it can be considered as circumstantial evidence that one has committed an offense and it is admissible into evidence as relevant to show consciousness of guilt. State ex rel Womack v. Blackburn, 393 So.2d 1216 (La.1981); State v. Rounds, 476 So.2d 965 (La.App. 1st Cir.1985).
In closing argument, defense counsel suggested a hypothesis of defendant's innocence. His theory is that Juanita is the prime suspect in this case because she was the only mature person who was in the house with the victim on the night of the murder. The defense called three witnesses to the stand, presumably to corroborate this theory.
Joanne Turner, defendant's mother, testified that she saw Juanita talking to defendant the day of the killing. Ms. Turner knew of a relationship that existed between the defendant and Juanita and testified she had seen them in bed together before. Juanita testified that no relationship ever existed between herself and defendant. She said she saw defendant, but did not talk to him, on the day of the murder.
Victoria Goodman, a neighbor of the victim, testified that on one occasion, Juanita and Ms. Holliday had an argument at Ms. Goodman's house. Juanita stated at trial that she and her mother usually did not argue, except about her school attendance.
Lougene Richard had custody of Juanita for approximately one month after Ms. Holliday died. Ms. Richard testified that Juanita threatened her and that she could not get along with her. Juanita denied threatening her foster mother.
Where there is conflicting testimony about factual matters, the resolution of which depends on the determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. The determination of what weight to give the evidence rests solely on the discretion of the trier of fact. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Campbell, 461 So.2d 644 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1299 (La.1985). It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d at 968.
The jury's verdict indicates that they found that defendant was the perpetrator of the crime. A review of the record indicates that the evidence is more consistent with the jury's finding than with any hypothesis of innocence. The evidence presented by defendant did not refute the testimony of Juanita, who stated she saw defendant wielding a pistol only moments after she awoke and saw her mother lying on the bed, shot to death. Nor was there any contradiction of the testimony of Rebecca Johnson relative to her seeing defendant strike Juanita with a pistol and hearing defendant's assertion as to what he would have done had he had more bullets.
We conclude that, when the evidence is viewed in a light most favorable to the state, it is certainly reasonable that a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of the second degree murder of Lillie Mae Holliday. We find this assignment lacks merit.
For the above and foregoing reasons, we affirm the verdict and the sentence.
CONVICTION AND SENTENCE AFFIRMED.