# Supreme Court of Louisiana

The Opinions handed down on the **13th day of December, 2024** are as follows:

**BY Knoll, J.:**

2023-K-01715     STATE OF LOUISIANA  VS.  JAYLON K. BROWN (Parish of Iberville)

AFFIRMED. SEE OPINION.

Hughes, J., dissents and assigns reasons.

Crichton, J., additionally concurs and assigns reasons.

Griffin, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2023-K-01715

## STATE OF LOUISIANA

## VS.

## JAYLON K. BROWN

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of Iberville

**Knoll, Justice *Pro Tempore*[1]**

This writ concerns the removal of a sleeping juror from defendant's criminal trial for two counts of second degree murder. Jaylon K. Brown, defendant, claims his constitutional and statutory rights were violated when the District Court removed the juror outside of his presence and without a hearing. Finding defendant's arguments lack merit, we affirm.

Defendant was charged by Grand Jury indictment with two counts of second degree murder, violations of La. R.S. 14:30.1(A)(1). He pleaded not guilty. The jury returned a verdict guilty of second degree murder as to Dararius Evans (Evans), and guilty of the responsive verdict of manslaughter as to Aleysia Maynor (Maynor). Defendant was sentenced to concurrent terms of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for the second degree murder conviction and forty years imprisonment at hard labor for the manslaughter conviction.

The Court of Appeal affirmed defendant's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On December 28, 2019, about 9:36 p.m., the St. Gabriel Police Department responded to a 911 call from the victim, Evans, who was near the Louisiana State

---

[1] Justice Jeannette T. Knoll, retired, assigned as Justice *Pro Tempore*, sitting due to the vacancy in Louisiana Supreme Court District 3.

Agricultural Center in St. Gabriel, stating "Sneaks" had shot him. The Evans vehicle was found in a ditch with Evans slumped over and bleeding in the driver's seat, and Maynor bleeding from her neck in the front passenger seat. Maynor was pronounced dead at the scene. Evans was transported to the hospital where he later died.

"Sneaks" was defendant's nickname. After the police found and identified "Sneaks" as the defendant, the police gave him the *Miranda* rights. Defendant gave two video statements denying involvement in the shooting before he provided a short two-page handwritten "self-defense" statement. In his third video statement to police, Defendant confessed that, during an altercation with Evans, he shot Evans in self-defense, and he alleged Maynor was accidentally shot. He threw the gun in a storm drain in Baton Rouge. Defendant was arrested and ultimately charged by Grand Jury indictment with two counts of second degree murder of Evans and Maynor.

During the four day trial, concerns arose over juror Bernadine Poole (Poole) repetitively sleeping during the presentation of evidence. The District Court eventually released juror Poole from the jury and replaced her with an alternate juror. Defendant's attorney commented that juror Poole was the only African American on the panel and objected that she was unfairly struck violating defendant's constitutional right to have his case decided by a juror of his choice.[2]

The Appellate Court found the District Court did not err by removing juror Poole, finding her sleeping was a substantial and chronic distraction to the trial court, not merely a "minor, isolated incident." She was repeatedly observed with her eyes closed on multiple days of the trial during live witness testimony, as well as during the presentation of the defendant's three-hour long video statement. Juror Poole was verbally warned to stay awake on several occasions by the District Court and was

---

[2] Other than defense counsel making the observation that juror Poole was the only African American on the jury, race was not a basis for any issues raised by defendant. It was merely a comment.

even tapped on her shoulder to wake her up by a bailiff and another juror. On one occasion, she exhibited "over-exerted respiration" through her mouth, which resembled snoring. Notably, defense counsel did not move for a hearing to question juror Poole on the record. Further, defense counsel failed to object that juror Poole was disqualified outside the presence of the defendant.

After its thorough review, the Appellate Court found no abuse of discretion by the District Court removing juror Poole after she was shown to have been sleeping through a substantial part of the trial and was unable to remain awake despite warnings and efforts to rouse her. Judge Holdridge concurred in part and dissented in part. The dissent found the District Court's dismissal of juror Poole without an evidentiary hearing, and after sidebar discussions with counsel outside the presence of defendant, constituted an abrogation of defendant's fundamental right to a fair trial.

## DISCUSSION

Concerns over juror Poole were brought up early in the proceedings and continued until her dismissal. The first time juror Poole's sleeping was mentioned was prior to the jury's viewing of defendant's first video interview with police. On the first day of testimony, the trial Judge took a break during which the State noted "if we observe that Ms. Poole goes to sleep halfway through . . . . I'm getting concerned about that." In response to the State's comment, the trial Judge mentioned she had noticed it earlier during one of the first witness's testimony, so the Judge had the bailiff go tap her on the shoulder. Juror Poole did awaken at that point sufficiently. At 4:42 p.m., during the presentation of the defendant's first video interview, the Judge mentioned—with all counsel present—that juror Poole was curled up under her blanket and dozing. The State again mentioned that she was sleeping, and in response, the trial Judge stated "[juror Poole] says every time we touch her . . . 'I'm honestly not sleeping.' I don't think she can possibly be listening."

3

The trial Judge then asked if the trial could stop for the day. No one objected to the continuance.

The next day, the trial Judge continued playing defendant's first video interview for the jury. The trial Judge took its first break during the presentation for everyone to "take a stretch at this time just to make sure everyone's able to continue paying attention." There was a second break taken for a bathroom break and for the jurors to stretch, to "make sure [we] have all [of] your attention." The trial Judge also asked for a sidebar discussion with all of counsel, which was off-the-record. After a break, the trial Judge referred to their last off-the-record discussion about juror Poole and asked counsel if they would like her brought in to address her. The trial Judge also noted that she spoke to juror Poole the previous afternoon as they were walking out about juror Poole's eyes being closed. Shortly after, the State moved to strike juror Poole from the jury. Notably, the trial Judge asked defense counsel if he would like to respond; defense counsel simply noted he had not been paying close attention to juror Poole. He maintained that removal was unnecessary based on juror Poole's response that it was not uncommon for her to close her eyes while listening to things. Defense counsel then objected to removing juror Poole from the jury.

The trial Judge placed her observations on the record:

> So yesterday—it was one of the first few witnesses, when an aerial photo was being discussed with the witness, that's when I first noticed her having her eyes closed. And I'm not sure how we dealt with it at that point, and it's intermittent.

> And then we made efforts during the playing of the tape when we all noticed—well, when a lot of us in the courtroom noticed that she had her eyes closed again. I had the bailiff tap her—actually, I had the bailiff tap her during the live testimony because I remember he had to walk around the microphone, so that was as early as then that we were trying to wake her up. And I remember seeing her mouth "I'm listening, I'm listening."

> Then we saw her, what appeared to be sleeping during the video being played multiple times. And I even saw Ms. Trahan—I'm sorry,

Ms. Thibeau had to tap her awake and she said, "I'm listening, I'm listening."

Then yesterday[,] as I was walking out[,] Ms. Poole was also walking out[,] and I took it upon myself to address her about her eyes being closed and I told her that she was concerning me that she was not able to be awake. And she said, kept repeating[:] "I'm listening, I can hear better with my ears—with my eyes closed."

And she said, "Y'all would all know if I was really sleeping."

Then this morning, I could not see her because they had to move the big TV in front of the jury so they could hear a little better, but I understand she was having some over-exerted respirations out of her mouth that would've resembled a mild snore. It did not make noise, it was just a visible blowing out of your mouth more than you would if you were awake.

At that point[,] I had to ask the jury to stand up and get their wiggles out trying to wake her up. Again, I didn't see her[,] but my staff reported to me that she took a long time to rise, seemingly because she didn't hear my instruction for everyone to stand up.

And then[,] it was reported to me again that she was—appeared to be sleeping. That's when I decided to take the break. Then we had an off-the-record sidebar because I wanted to understand what the positions were of the lawyers.

So, when huh—with the motion, I understand [defense counsel] is making an objection to it, but I think that Ms. Poole is rendered unavailable at this point because she's not able to stay awake.

And, just for the record, all of those occurrences were morning and afternoon, yesterday and then today[,][this] morning, so I don't think it's one time or the other during the day that's worse or better. I think we just have a global problem of keeping her awake, that is being awake, being attentive with your eyes open during live testimony, looking at aerial photos and even some of the video is important obviously. It's of the utmost importance.

So[,] for those reasons[,] I am going to strike Ms. Poole for cause. We do have two alternates that are participating, so I think that this should be a remedy for the problem.

The trial Judge asked the State and defense counsel: "I think at this point I need to hear from you your suggestions on when and where I should address Ms. Poole personally and tell her that she's going to be stricken." Notably, defense counsel neither objected nor requested an evidentiary hearing with juror Poole before the District Court struck her from the jury. The trial Judge then asked, "Let

5

me ask y'all this, do y'all want me to tell her why or just tell her she's excused." Only the State responded. At that point, juror Poole was brought back, and the trial Judge, in a sidebar discussion, excused the juror. After juror Poole exited the courtroom, defense counsel noted his objection in striking juror Poole.

Defendant asserts that once a juror is qualified as competent to serve and sworn in, the defendant must be present any time a sworn juror's competency to serve is challenged or questioned, or else the entire proceeding is vitiated. Defendant argues his absence during the proceedings constituted patent error pursuant to La. C.Cr.P. art. 920(2), as provided by in La. C.Cr.P. art. 831(A)(3) (providing that defendant shall be present at "proceedings for the discharge of a jury or of a juror."). Defendant argues defense counsel did not waive his presence during the sidebar discussions, nor did defense counsel do anything which can be construed as acquiescing in defendant's absence. We note, however, the record shows defense counsel did not request the District Court to include defendant's presence at the sidebar discussions. As stated above, he only objected when the District Court struck juror Poole from the jury.

To reiterate, the record indicates defense counsel only objected to the juror's removal but did not lodge a contemporaneous objection to defendant's exclusion from the sidebar discussions or the lack of questioning of the juror on the record. La. C.Cr.P. art. 841; *State v. Johnson*, 389 So.2d 372, 377 (La. 1980) (defendant is limited on appeal to grounds objected to at trial); *State v. Ferguson*, 358 So.2d 1214, 1220 (La. 1978). While defendant's absence from the courtroom during the "calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror" has the effect of vitiating the entire proceedings, the rights granted by Article 831 are not absolute and can be waived by voluntarily absenting oneself or by not filing a contemporaneous objection to a discussion held in his absence. *State v. Wilson*,

6

44,586, p. 13 (La. App. 2 Cir. 10/28/09), 26 So.3d 210, 219-20, *writ denied*, 09-2655 (La. 1/28/11), 56 So.3d 973; *State v. Raymond*, 08-1204, p. 16 (La. App. 5 Cir. 4/28/09), 13 So.3d 577, 588, *writ denied*, 09-1205 (La. 2/5/10), 27 So.3d 296 (citations omitted).

Defense counsel was at all sidebar discussions and was afforded multiple opportunities by the District Court either to make an objection or discuss how they should proceed in addressing the matter of juror Poole's sleeping. An irregularity or error cannot be availed of after the verdict is rendered unless an objection was made at the time of occurrence; this allows the trial judge to be apprised of the objection and given an opportunity to correct the alleged error. *See State v. Mart*, 419 So.2d 1216 (La. 1982).[3] Defense counsel's failure to make contemporaneous objections to defendant's absence or the lack of a formal hearing resulted in the issues not being preserved for appeal. Notwithstanding, we find defendant's interests were protected as his counsel was present during all sidebar discussions. The only issues before us concern whether juror Poole's sleepiness was sufficient grounds for her removal from the jury, and whether the District Court properly removed her.

As to juror Poole's removal, La. C.Cr.P. art. 789 allows for alternative jurors and provides, in pertinent part, alternate jurors "shall replace jurors who become

---

[3] In *Mart*, this Court emphasized the contemporaneous objection rule serves several purposes:

> The contemporaneous objection rule serves two laudable and related purposes. The first is succinctly stated in Professor Dale Bennett's original comments to C.Cr.P. Art. 841: to prevent the defendant from having "an anchor to windward" to urge for the first time in the event of conviction. See D. Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175 (1967). In fairness to the state, defendant cannot simply watch the proceedings unfold and silently hope that the state will introduce inadmissible evidence or that the trial court will commit error. Significantly, the rule also prevents defendant from adopting, as a matter of strategy, one approach at trial, and then, if that approach fails, arguing a contrary view on appeal.

> The second and related purpose is one of judicial efficiency. The defendant has a duty to alert the trial court, if he objects to the admissibility of evidence or the method of proceeding. This allows the trial court to correct (or avoid) error, so that the verdict results from a trial which is as error-free as possible.

*State v. Mart*, 419 So.2d at 1218.

unable to perform or disqualified from performing their duties." Upon finding a juror has "become unable to perform or disqualified from performing" his duty, a trial judge has the discretion to replace a juror with an alternate. *State v. Derouselle*, 99-3283, pp. 1-2 (La. 4/28/00), 761 So.2d 1269, 1270.

The leading case on the issue of a sleeping juror is *State v. Cass*, 356 So.2d 396 (La. 12/19/77), as correctly noted by defendant. Defendant argues *Cass* must be interpreted to require the trial court to allow the parties to question the juror on the record as to his inability to perform his duties before the juror is removed for sleeping. While defendant is correct to note the *Cass* court reversed a conviction and found the trial judge erred in replacing a juror whom he thought to be sleeping, *Cass* also distinguished a juror who "briefly doze[d] off" from one who apparently slept through a significant portion of the trial. In *Cass*, the trial judge noticed one of the jurors appeared to be asleep. The trial judge indicated the juror's head was hanging low, often-times bobbing or nodding, and his eyes were closed. After two to four minutes of such observation, the trial judge summarily ordered the removal of the juror. However, in reversing, the Court in *Cass* also specifically noted:

> Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had defendant and the state been afforded an opportunity to explore on the record the [juror's] inability to perform on this account, we would be presented with a substantially different question for review.

*Id.* at 398.

We do not interpret the *Cass* opinion as mandating an evidentiary hearing before a juror may be removed. It is not required by law. We recognize District Courts may have a hearing before a juror is removed but that is within the discretion of the District Court conducting the trial; a hearing is not mandatory.

The function of a juror is to observe the physical evidence and demeanor of witnesses testifying.

8

Juror Poole appeared to be sleeping through a substantial and significant portion of the trial, including live witness testimony, when the jury was viewing photographs, and when defendant's first video interview, which lasted three hours, was played for the jury. In the first video, defendant adamantly proclaimed his innocence, protested his encounter with the victims was brief, and claimed he was not at the scene when the murders occurred. He repeatedly asserted Evans was his good friend. Defendant also frequently referenced his phone and text messages, and he is seen handing officers his phone to affirm his then-story and to emphatically deny the officers' assertions. As all of this evidence was being presented, juror Poole was sleeping. Juror Poole's observations of defendant's actions, reactions to officers' questions, and demeanor were important in assessing his credibility. The importance of juror Poole being attentive and awake during presentation of defendant's first video is heightened because defendant did not testify nor present any witnesses or evidence. It was through cross-examination, and defendant's third video and the related handwritten statement, that defense counsel attempted to show defendant shot Evans in self-defense. A juror's comparison of defendant's first video with his third video was paramount. We find juror Poole's sleepiness untenable and impaired her ability to serve on the jury. Accordingly, we find the District Court did not abuse its discretion in properly removing juror Poole from the jury.

## CONCLUSION

Clearly, the record supports juror Poole was not an attentive juror. Her sleepiness put her evaluation of the evidence at risk. The trial Judge's thorough reasons clearly show concern for juror Poole's ability to make a proper determination of the evidence presented at trial. We agree. Under the circumstances of this case, we find the District Court did not abuse its discretion and properly removed juror

Poole and replaced her with an alternate juror. Based on this record, even if defense counsel had objected contemporaneously, the outcome would have been the same.

**AFFIRMED.**

SUPREME COURT OF LOUISIANA

No. 2023-C-01715

STATE OF LOUISIANA

VS.

JAYLON K. BROWN

On Writ of Certiorari to the Court of Appeal, First Circuit,
Parish of Iberville

**HUGHES, J., dissenting.**

Defendant was wrongfully convicted of murder. In order to affirm his conviction this court:

1) Ignores the physical evidence.

2) Ignores the "harmless error" rule.

3) Ignores the "patent error" rule.

4) Sanctions the unconstitutional removal of the only black juror and

5) Suggests that criminal defendants (presumably even those charged with murder) should be called up to the bench to participate in off-the-record bench conferences with the attorneys and trial judge.

It has been said that conducting a jury trial is a little like running a kindergarten class. The judge has litigants, relatives, attorneys, jurors, witnesses, and bailiffs to keep track of and in some instances to keep apart. In this case the excellent trial judge excused a juror mid-trial after receiving some observations that the juror appeared to be dozing off, although the juror denied it. Unfortunately, the juror was dismissed (and presumably replaced with an alternate although the minutes of court do not so reflect or even give the name or juror number of the alternate) during a recess, outside the presence of the defendant, and without a hearing.

The law and the jurisprudence are beyond settled that in these circumstances the defendant must be present and there should be a hearing before a seated juror is dismissed. La. Code of Criminal Procedure art. 831 (A)(3) provides:

> a defendant charged with a felony <u>shall be present</u> at … the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent <u>proceedings</u> for the <u>discharge</u> of the jury or <u>of a juror</u>. (emphasis added)

For a seated juror to be discharged, the defendant must be *present* at a *proceeding*. The discharge cannot occur during a recess. <u>See</u> **State v White**, 153 So.2d 401, 408-09 (La. 1963) (conviction vacated where parties disqualified a sworn juror in an *ex parte* hearing, outside the presence of the defendant); **State v Copeland**, 419 So.2d 899, 905 (La. 1982) (conviction vacated where trial judge disqualified sworn jurors outside the presence of the defendant without a hearing); **State v Clay**, 441 So.2d 1227, 1230 (La. App. 1st Cir. 1983), writ denied, 446 So.2d 1213 (La. 1984). The defendant's absence during this important event in the course of trial "has the effect of vitiating the entire proceedings." **White**, 153 So.2d at 408; **Clay**, 441 So.2d at 1230.

The majority, with an opportunity for detached and deliberate analysis, errs more greatly than the trial court. The Louisiana Supreme Court in **State v Cass**, 356 So.2d 396 (La. 1977) held that "the right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable." In **Cass**, in very similar circumstances, this court found the removal of a juror constituted reversible error, commenting:

> We determine that even if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had defendant and the state been afforded an opportunity to explore on the record the defendant's inability to

2

perform on this account, we would be presented with a substantially different question for review.

The majority misreads **Cass** in two ways. First, by interpreting **Cass** to mean that if a juror appears "to be sleeping through a substantial and significant portion of the trial," then the juror may be discharged without a hearing. But **Cass** actually says that if there is such a showing AND the parties have been "afforded an opportunity *to explore on the record"* the juror may be discharged. The majority misreads "and" for "or." There must be an opportunity to explore the concerns about a sleepy juror *on the record, in a proceeding*. The United States Supreme Court has held that concerns about a juror should not be decided by the judge alone, but rather "in a hearing with all interested parties permitted to participate." **Remmer v United States**, 347 U.S. 277 (1954). Dismissing the juror during a recess rather than in a "proceeding" with all parties present is problematic. By not having an evidentiary hearing the parties were denied the opportunity to question the juror on the record, and this court was deprived of the opportunity to review the evidence. See **State v Burns,** 35,267 (La. App. 2 Cir. 10/31/01), 800 So.2d 106, 108 (conviction reversed where alleged sleeping juror was summarily discharged during off-the-record discussion); cf. **State v Traylor**, 51,901 (La. App. 2 Cir. 2/28/18), 246 So.3d 665, 671, writ denied, 2018-0493 (La. 2/11/19), 263 So.3d 893 (no abuse of discretion in removing sworn juror, where trial court held a hearing before removing juror); **State v Preston**, 2015-306 (La. App. 5 Cir. 10/28/15, 178 So.3d 207, 218, writ denied, 2015-2169 (La. 11/18/16), 210 So.3d 283 (no abuse of discretion in refusing to remove sworn jurors after the parties were allowed to explore on the record whether juror were sleeping). The result in some cases may be obvious, in others it may be a close call. But appellate review cannot be foreclosed under any circumstances.

Further, **Cass** clearly states that the doctrine of harmless error is inapplicable. When fundamental constitutional rights such as having a case decided by a jury

3

picked by the litigants, and serving on a jury, are deprived, the error cannot be harmless. The majority, while acknowledging error, blames it on defense counsel for not make a "contemporaneous objection." Counsel did object, both before and after the juror was dismissed, but the majority deems the objection insufficient because defense counsel did not specifically request a hearing.

Judges err, not lawyers. It is the duty of the judge to know and apply the law. Regardless, the majority concludes by stating "Based on this record, *even if* defense counsel had objected contemporaneously, the *outcome* would have been the same" (emphasis added). The majority thus acknowledges the error, but suggests *even if* the error had been avoided, the result on the merits would be the same. By relying on its perception of the merits ("the outcome") rather than addressing the procedural deprivation of constitutional rights, the majority has in effect conducted a harmless error analysis contrary to our holding in **Cass**.

On top of all this, the majority flat-out ignores the law on patent error. The defendant specifically argues the dismissal of the juror in this case reveals patent error; that is, an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La. Code of Criminal Procedure art. 920(2). The minutes of court show that the juror was dismissed during a recess. The majority avoids this argument by again resorting to the "contemporaneous objection" rule, suggesting that defendant's counsel failed to object to defendant not being invited to participate in a "sidebar" conference where the juror's fate was decided. Aside from the fact that such a suggestion is unprecedented (if not dangerous) the majority fails to recognize that patent error is an exception to the contemporaneous objection rule. Article 920 provides that patent error "shall be considered on appeal."

In the case of **State v Howard**, 258 So.3d 66 (1ˢᵗ Cir. 2018), in an opinion by justice-elect Guidry, the court noted that Louisiana Code of Criminal Procedure

article 920(2) contains an exception to the contemporaneous objection rule, which provides that an error patent, i.e., "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence," shall be considered on appeal. Additionally, the Louisiana Supreme Court has carved out jurisprudential exceptions to the rule requiring contemporaneous objection, **State v Montoya**, 340 So.2d 557 (La. 1976); **State v Williamson**, 389 So.2d 1328 (La. 1980); **State v Green**, 493 So.2d 588 (La. 1986); **State v Arvie**, 505 So.2d 44 (La. 1987). The supreme court reasoned that these exceptions are similar to the federal "plain error" rule, **State v Thomas**, 27, 507 (La. App. 2 Cir. 12/6/95), 665, writ denied, 96-0119 (La. 4/8/96), 671 So.2d 333. Errors that affect substantial rights of the accused are reviewable by the appellate court, even absent contemporaneous objection, to preserve the "fundamental requirements of due process." **Williamson**, supra; **Green**, supra. Several other cases have recognized that patent error does not require a contemporaneous objection, *see* **State v Brown**, 345 So.3d 988 (La. 2022), **State v McDowell**, 358 So.3d 277 (3rd Cir. 2023), **State in re C.H.**, 335 So.3d 451 (4th Cir. 2022), and **State v Harris**, 20 So.3d 1121 (2nd Cir. 2009).

Patent error discoverable from a mere inspection of the record should have been addressed by the majority. And we shouldn't overlook Ms. Poole, the only black juror. She also has a fundamental constitutional right of due process to serve as a juror. When the trial court inquired as to whether Ms. Poole should be told why she was being excused, the prosecution advised against it, "because she may start defending it." The trial court commented "She doesn't need to know why – never – they never do." To which the prosecutor replied, "Right. And then she doesn't need to know." Upon which Ms. Poole was summarily dismissed.

Ms. Poole may have been dozing off, but that is not the issue. The constitutional protections for trial by jury apply to all, big and small. Even Presidents can be accused of crimes. In this case appellate counsel did not raise as

5

error the sufficiency of the evidence. On the other hand, the goal is truth and justice, and this court has previously held that when an essential element of a charged offense is lacking, the conviction must be set aside, regardless of how the error is brought to the attention of the reviewing court, **State v Raymo**, 419 So.2d 858 (La. 1982).

The uncontested facts show that:

1. The murder weapon belonged to the driver, not the defendant.

2. The driver set up the meeting, not the defendant.

3. The front seat passenger was shot behind the left ear from less than 12 inches away.

4. The front seat passenger was found with seat belt fully buckled.

The evidence is thus consistent with defendant's statement that the driver produced the weapon, extended it to threaten defendant in the back seat, a struggle ensued, and the gun fired, killing the front seat passenger as the driver's arm was extended. The driver, not defendant, is responsible for the death of the front seat passenger under the theory of transferred intent. When the driver produced the weapon to threaten or harm defendant, defendant was reasonable in resisting, and the driver's criminal intent to harm defendant was transferred to the front seat passenger.

Defendant gained control of the weapon and at this point could have simply exited the vehicle. Instead, defendant unloaded a spray of bullets as he exited, ranging from striking the driver's side mirror, to the post behind the passenger seat. One shot hit the driver in the leg and another in the back after traveling through the back of the driver's seat.

The State does not offer an alternate scenario, but instead at trial put on evidence of phone calls, texts, cell phone tower information, and even aerial photographs. While the mass of this "evidence" apparently impressed the jury, it

6

was irrelevant to what happened inside the car, especially since defendant did not initiate the meeting.

Defendant is entitled to a new trial, before a properly constituted jury. Otherwise, he will be relegated to seeking rehearing, post-conviction relief, or federal habeas corpus relief.

For these reasons, I respectfully dissent.

**SUPREME COURT OF LOUISIANA**

**No. 2023-K-01715**

**STATE OF LOUISIANA**

**VS.**

**JAYLON K. BROWN**

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of Iberville

**CRICHTON, J., additionally concurs and assigns reasons.**

I agree with the majority but write separately to make clear that although a criminal defendant has the right to be present for every stage of the trial, he does *not* have a right to be present at a bench conference. Defendant argues that his absence from the bench conference during which the fate of Juror Poole was decided violated his right to be present at "proceedings for the discharge of a jury or of a juror" as required by La. C.Cr.P. art. 831(A)(3). The majority opinion notes that defendant's counsel neither requested his presence at the bench discussion nor made a contemporaneous objection to his absence and, thus, correctly concludes the issue was not preserved for appeal.

That said, the majority opinion should not be read to suggest that defendant's only bar to relief on this ground was due to his lawyer's failures. Defendant did not have a right to be present at the bench conference. *See e.g., State v. Love*, 50,238, p. 9 (La. App. 2 Cir. 1/13/16), 185 So.3d 136, 143, *writ denied,* 2016-0317 (La. 2/10/17), 215 So.3d 699 ("A defendant is not required to take part in all bench conferences."); *State v. Raymond*, 2008-1204, p. 17 (La. App. 5 Cir. 4/28/09), 13 So.3d 577, 589, *writ denied,* 2009-1205 (La. 2/5/10), 27 So.3d 296 (defendant's presence not necessary, in part, because "defense counsel was present at the bench conference to protect defendant's interests."); *State v. Williams*, 34,359, pp. 11–12 (La. App. 2 Cir. 5/9/01), 786 So.2d 203, 212, *writ denied sub nom. State ex rel.*

*Williams v. State*, 2001-2275 (La. 5/10/02), 815 So.2d 835 ("There is no jurisprudence, or specific statutory provision that requires the defendant's presence at a bench conference in order to satisfy Article 831.").

Not only is a criminal defendant's presence at a bench conference not necessary and certainly not required by law, in my view it is ill-advised. Instead, the best practice—and what should have occurred here—would be for the judge to ask the jury to leave the courtroom while a brief evidentiary hearing was held. This would have allowed for defendant's presence (at counsel table) during the proceeding while also preserving the record as to this issue. Nevertheless, in this case, the judge provided direct evidence of the juror's inability to serve on the jury and for that reason I fully agree with the majority decision's finding no abuse of discretion by the trial court.

*On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of Iberville*

**GRIFFIN, J., dissents and assigns reasons.**

"Once a jury has been selected and sworn, the accused has a right to have his fate decided by the particular jurors selected to try his case." *State v. Cass*, 356 So.2d 396, 397 (La. 1977). Mr. Brown, as the accused, has the right to have Ms. Poole, a juror selected by him, to try the case, and this right is "a substantial one, the improper deprivation of which is prejudicial." *Cass,* 356 So.2d at 398.

The majority asserts that Juror Poole appeared to be sleeping through a significant portion of the trial which warranted her removal. However, appearing to be asleep is not the standard. Even if a juror briefly dozes off, such is not per se proof of inability to perform. *Id.* An inability to perform may be established "had a juror been shown to have been sleeping through a substantial part of the trial or is unable to stay awake despite warnings or efforts to arouse him." *Id.* The strongest purported evidence that Ms. Poole missed a substantial amount of the trial is when it was reported to the trial judge that Ms. Poole's breathing resembled that of someone snoring. Yet after this report the trial judge instructed the jurors to stand and Ms. Poole complied. That she may have taken longer to rise than the other jurors does not mean she was asleep when the instructions were given as the majority asserts. The trial judge concedes she did not personally observe Ms. Poole on this occasion.

Further, while the trial judge asserts that she observed Ms. Poole with her eyes closed on two different occasions, it was never determined whether Ms. Poole was, in fact, asleep. Every time Ms. Poole was asked about her eyes being closed, she responded that she was listening. The State made no showing that Ms. Poole was actually asleep or unable to perform her duties as a juror. I do not therefore believe that sufficient evidence was put forth to show that Ms. Poole missed a significant part of the trial and we have no record to review as to whether Ms. Poole was actually sleeping. *See State v. Johnson*, 463 So.2d 620, 627 (La.App. 1st Cir. 1984) ("The trial judge ruled that, although he saw two women jurors with their eyes closed during the reading of the transcript of the victim's cross-examination, he did not believe they were asleep. Furthermore, defense counsel neither requested an opportunity to determine nor made any showing that the jurors were actually asleep or unable to perform."). For these reasons, I respectfully dissent.