STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-538

STATE OF LOUISIANA

VERSUS

MARCUS DEANGELO TENNORS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 273265
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy H. Ezell, and J. David Painter, Judges.

CONVICTIONS REVERSED AND CASE REMANDED FOR A NEW TRIAL.

James C. Downs
District Attorney - 9th Judicial District Court
701 Murray Street
Alexandria, LA 71301
Telephone: (318) 473-6650
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Thomas Carl Walsh, Jr.
Assistant District Attorney
P. O. Drawer 1472
Alexandria, LA 71309
Telephone: (318) 473-6650
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**Telephone: (337) 491-0570**
**COUNSEL FOR:**
      **Defendant/Appellant - Marcus Deangelo Tennors**

THIBODEAUX, Chief Judge.

The Defendant, Marcus Deangelo Tennors, appeals his jury convictions for aggravated burglary and simple burglary. Because the trial court committed legal error by discharging a juror to allow that juror to fulfill a personal obligation prior to deliberations, we reverse the Defendant's conviction and remand for a new trial.

## ISSUES

The Defendant wishes us to determine whether:

(1)    the trial court erred in substituting a juror prior to deliberations;

(2)    the trial court erred in admitting prejudicial "other crimes" evidence; and,

(3)    there was insufficient evidence to support convictions for aggravated burglary and simple burglary.

Because we find merit in the erroneous substitution of a juror prior to deliberations, we pretermit a consideration of the other issues.

## LAW AND DISCUSSION

At the conclusion of the first day of jury selection, the trial court advised the six jurors who had not been excused as to when they should return, and advised them that they would be called by the court if excused by backstrike the following day. The court then addressed Dr. Robert Howell, and the following discussion took place:

BY THE COURT:

Dr. Howell, you have a class tomorrow?

BY DR. HOWELL:

I do, yes. My question was whether or not we can be reasonably sure as being let go whether the trial is over or not by 5:30 tomorrow evening?

BY THE COURT:

Yes. Even if we don't take a break for lunch, we'll be through by 5:30 tomorrow. You have to go somewhere?

BY DR. HOWELL:

I'm suppose to be officiating a football game and it's not the kind of thing you can call somebody 15 minutes before and get them to replace you, so that's why I asked.

BY THE COURT:

All right. Do you think that will be a problem, Mr. Walsh [assistant district attorney]?

BY MR. WALSH:

Judge, I'm looking at five or six witnesses. I don't think it's going to take that long.

BY MR. WILLIAMS [defense counsel]:

Judge, I believe that the time is always being underestimated on what it will take. I don't know how long these witnesses are going to take and I feel very --

BY THE COURT:

Well, we will know at 12:00 so we can tell Dr. Howell.

BY MR. WILLIAMS:

We should be able to get a better idea by then, but rather -- as of right now, I don't know how long this will take.

BY THE COURT:

And, if we have to, we can just use an alternate for that. Dr. Howell, that's what we have an alternate for, if you need to go officiate a football game, we'd want you to do that and we'd substitute an alternate.

Prior to charging the jury, the question of what should be done to accommodate juror Howell was raised by the court. The following dialogue forms the basis for this assigned error:

BY THE COURT:

I need to read you jury instructions right now. Do any of y'all need a break, a couple of you looked a little uncomfortable. It will take about 15 minutes for me to read this. Maybe not that long, just depending upon how I stumble across it. Dr. Howell, it's 4:25. Do you wish to be excused sir?

BY MR. HOWELL:

I really hate to leave people in a very bad situation, but I need to leave at 5:30, yes, sir.

BY THE COURT:

Well, we need to make that decision before we take a break because I can't let you go back there and if y'all don't render a verdict. I don't know how long it will take to render a verdict, but I can't take the chance. I can't keep the alternate here. If they go back to deliberate he has to be there. Would there be any problem if I would excuse him? I promised him I would excuse him and substitute him --

BY MR. WALSH:

No, Judge, because you had made that commitment, I think you made that commitment. I mean I'd rather not, but I am not going to lodge an objection and that -- it comes down to Mr. Williams.

BY MR. WILLIAMS:

Judge again, you -- I'm in a bad situation here. I understand he's got a commitment but the problem is I -- I can't go along with excusing him at this point. I have to lodge an objection.

BY THE COURT:

All right.

BY MR. WILLIAMS:

And not because I want to be a cold heart and I want him to miss the game, but –

BY THE COURT:

I understand.

BY MR. WALSH:

May I approach the bench with counsel?

BY THE COURT:

Yes.

BY THE COURT:

I tell you what, let us take a break, we'll go ahead and take a break for 5 minutes. If y'all will be excused and come right back. We can go off the record and we can take this up in just a little bit.


COURT RECESSES

COURT RECONVENES

BY THE COURT:

All right, Dr. Howell, I had previously -- I told you yesterday, you said that you could not serve if you were going to be here around 5:30 and it is now 4:37 and I'm about to give the jury instructions and so that would mean you would be getting to deliberate about 5 minutes until 5:00 which would give you about 20 minutes to deliberate and then run home and then so get to where you need to be at 5:30, so I want you to do that. And what I'm going to substitute you with the alternate, Ms. Bynog, and I said something to Ms. Bynog about that the other day that you may be substituted and that you need to pay attention. So, Dr. Howell, I apologize that you had to be here yesterday and today and you don't get to deliberate. You'd miss class at Louisiana College and I apologize to you, I thought the case would be over before then, but I appreciate your service and I'll excuse you. I'm going to find at this time you're unable to perform your duties as a juror and I will excuse you at this time. And I'm going to order that Ms. Bynog substitute for Dr. Howell. She will be juror number 4. All right, you're free to go. Thank you, sir.

## JUROR HOWELL IS EXCUSED

Louisiana Code of Criminal Procedure Article 789 states the law applicable to alternate jurors. It provides in pertinent part:

> A. The court may direct that not more than six jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, *shall replace jurors who become unable to perform or disqualified from performing their duties.* Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges for cause, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors. If the court determines that alternate jurors are desirable in the case, the court shall determine the number to be chosen. The regular peremptory challenges allowed by law shall not be used against the alternate jurors. The court shall determine how many additional peremptory challenges shall be allowed, and each defendant shall have an equal number of such challenges. The state shall have as many peremptory challenges as the defense. The additional peremptory challenges may be used only against alternate jurors. Except in capital cases, an alternate juror who does not replace a principal juror may be discharged when the jury retires to consider its verdict.

(Emphasis added).

The trial court, over defense objection, replaced a juror with an alternate juror, finding the juror "unable to perform" his duties due to a prior commitment to officiate at an athletic event. When the court first indicated an intent to accommodate Dr. Howell during voir dire, defense counsel expressed concern that the trial might extend later than expected, but he did not formally object to the court's stated intent.

The impropriety of releasing a juror to allow him to fulfill a personal obligation appears to be one of first impression by this court in the context presented. In *State v. Brossette*, 93-1036 (La.App. 3 Cir.), 634 So.2d 1309, *writ denied*, 94-0802 (La. 6/24/94), 640 So.2d 1344, this court found no error when the trial judge excused a juror, over defense objection, who brought to his attention an employment relation

5

with a witness who testified by stipulation. The defendant contended that it was improper to excuse a juror who was not incompetent. Even though the juror testified that she would not be swayed to change her vote as a result of her supervisor's testimony being offered by stipulation, this court found that the judge could have reasonably concluded that the juror could be affected or biased by the employment relationship. *State v. Brossette*, 634 So.2d 1309.

Also, in *State ex rel. Skipper v. State*, 03-842, 03-844, 03-845 (La.App. 3 Cir. 12/10/03), 861 So.2d 796, *writ denied*, 03-3083 (La. 12/12/03), 860 So.2d 1164, *writ denied*, 04-03 (La. 4/23/04), 870 So.2d 298, this court found no error when the trial court replaced a juror with an alternate juror after finding out that the juror had an out-of-state rap sheet and time did not allow the court to ascertain immediately if the conviction shown was a felony.

The Louisiana Supreme Court in *State v. White*, 153 So.2d 401 (La.1963), found the facts to be that a juror, on the fifth day of a six-day trial, advised the trial judge that he thought he was disqualified. In the presence of counsel for both the state and defense, but outside the presence of the defendant, the judge, without asking the juror specifics of why he felt he had a conflict of interest, inquired whether the juror could decide the case on the evidence and disregard the alleged conflict. The juror responded: "It would tax me to do so." Thereafter, the judge released the juror and replaced him with an alternate.

The supreme court, in reversing the trial court, first discussed the evolution of the law allowing the use of alternate jurors. The court then held in *White*, 153 So.2d at 408:

> It would appear to us that under the clear language of the pertinent provisions of R.S. 15:362, reflected by the underscored portion hereof appearing in Footnote No. 6, the judge is without authority to excuse a juror and substitute the alternate unless and until a juror dies, is too

6

ill to serve, or there is a Legal cause that renders him incompetent to serve.

Interpretation of the present law found in La.Code Crim.P. art. 789 remains consistent with *State v. Square*, 244 So.2d 200, 237 (La.1971), *vacated and remanded on other grounds*, 408 U.S. 938, 92 S.Ct. 2871 (1972), wherein the court held, "[w]e are of the opinion that under Article 789 the jurors once selected are expected to serve, save in cases of death, illness or other cause which renders the juror unfit or disqualified to perform his duty."

The issue of the removal of a juror and the substitution of an alternate juror has almost exclusively been reviewed in the context of a juror who has become disqualified after being empaneled. In *State v. Rounsavall*, 337 So.2d 190 (La.1976) and *State v. Buggage*, 351 So.2d 95 (La.1977), both of which were later expressly overruled in *State v. Marshall*, 410 So.2d 1116 (La.1982), the Louisiana Supreme Court refused to countenance replacing jurors who became disqualified or unable to serve after having been sworn with alternate jurors, holding that once sworn, jurors could be discharged only if found to be incompetent. In *Rounsavall*, 337 So.2d 95, a juror failed to disclose during voir dire his acquaintance with a member of the district attorney's office, and in *Buggage*, 351 So.2d 95, a juror, after being sworn in a capital murder case, made known that she had misunderstood questions in voir dire and was opposed to the death penalty.

In *Marshall*, 410 So.2d at 1118, the Louisiana Supreme Court held that the trial court correctly discharged a juror who, after being sworn, was determined to be "not impartial," as "unable to perform or disqualified from performing" her duty under La.Code Crim.P. art. 789. Both *State v. Rounsavall*, 337 So.2d 190 and *State v. Buggage*, 351 So.2d 95, which had held that jurors, once sworn, could not be discharged unless they became incompetent to serve were overruled.

In *State v. Cass*, 356 So.2d 396, 397 (La.1977), the supreme court reversed a conviction, finding the judge erred in replacing a juror whom he thought to be sleeping. The court stated:

> Defendant contends in these assignments of error that the trial judge erred in removing a juror during trial and substituting an alternate juror in his place when the juror allegedly fell asleep during the victim's testimony on cross-examination. Defendant argues that the conduct of the juror did not render him unfit or disqualified to perform his duties and, hence, he was improperly removed. In explaining his reasons for removing the juror, the trial judge stated that when he observed the juror sleeping he became concerned that he was ill. After the juror was removed and replaced, defendant moved for a mistrial, which the trial judge denied.

> The record indicates that shortly before the end of the first day of trial the judge apparently noticed that one of the jurors appeared to be asleep. The judge indicated that the juror's head was hanging low, often-times bobbing or nodding, and his eyes were closed. After two to four minutes of such observation the judge summarily ordered the removal of the juror. Before leaving the courtroom the juror twice stated aloud that he had not been asleep.

> Article 789 of the Louisiana Code of Criminal Procedure provides in pertinent part:

>> "The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties prior to the time the jury retires to consider its verdict. . . ." (emphasis ours).

> In two recent decisions rendered by this Court we have had the opportunity to discuss the serious nature of a trial court's removal of a juror and the circumstances under which such a procedure would be deemed proper. In *State v. Buggage*, 351 So.2d 95, 96, decision rendered October 10, 1977 this Court, per the Chief Justice, cited the following language authored by Justice Summers in *State v. Rounsavall*, 337 So.2d 190 (La.1976) relative to the replacing of a regular juror with an alternate:

8

"Alternate jurors are drawn and serve to replace jurors who become unable to perform or who are disqualified from performing their duties prior to the time the jury retires to consider its verdict. La.Code Crim.Pro. art. 789. And, while the court may disqualify a prospective juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case, ibid. arts. 783, 787, once the trial has begun by the swearing of the first juror selected, ibid. art. 761, and the jurors are accepted and sworn, they may not be removed unless they are 'incompetent to serve', ibid. art. 796.

"Once a jury has been selected and sworn the accused has a right to have his fate decided by the particular jurors selected to try him. The phrase 'incompetent to serve' embodied in Article 796 refers to death, illness or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed. The right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. *State v. White*, 244 La. 585, 153 So.2d 401 (1963); *State v. Willie*, 130 La. 454, 58 So. 147 (1912)."

Consistent with *State v. Buggage, supra*, and *State v. Rounsavall, supra*, and applying C.Cr.P. Art. 789, we determine that even if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had Defendant and the State been afforded an opportunity to explore on the record the Defendant's inability to perform on this account, we would be presented with a substantially different question for review.

Under the circumstance present here, the assignment has merit. We hold that the trial judge erred in summarily removing the juror under the circumstances and in the manner which he did, and in refusing Defendant's motion for a mistrial. For this reason, we reverse Defendant's conviction and sentence and remand the case for a new trial.

*Cass*, 356 So.2d at 397-98 (footnote omitted) (emphasis and alterations in original).

*Cass*, 356 So.2d 396, which predated *Marshall*, 410 So.2d 116, and cited with approval language found in *Rounsavall*, 337 So.2d 190, and *Buggage*, 351 So.2d 95, both of which were expressly overruled by *Marshall*, was not overruled and continues to be cited as authority. In *State v. Clay*, 441 So.2d 1227, 1230 (La.App. 1 Cir. 1983), *writ denied*, 446 So.2d 1213 (La.1984) (citing *Cass*, 356 So.2d 396), the court stated:

> La.Code Crim.P. art. 789 provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified. Once a jury has been selected and sworn the defendant has a right to have his case decided by the particular jurors selected to serve.

*See also State v. Williams*, 500 So.2d 811 (La.App. 1 Cir. 1986).

In *State v. Delore*, 381 So.2d 455, 459 (La.1980), the supreme court first addressed the issue of substitution of jurors for physical reasons. The court stated:

> After twelve jurors had been selected, court adjourned for the day. A panel of potential alternate jurors was summoned for the next day. During the overnight recess, one of the jurors, Mrs. Della Perkins, became ill and was taken to her personal physician, Dr. Edgar Landry, for treatment. Dr. Landry testified that she was incapable of serving, and she was excused. Counsel for defendant contends that his motion for mistrial should have been granted at that point.
>
> A juror who is disabled by illness is "incompetent to serve." LSA-C.Cr.P. art. 796; *State v. Rounsavall*, 337 So.2d 190 (La., 1976). When a juror becomes incompetent during the course of trial and no alternate is available, a mistrial may legally be ordered because "It is physically impossible to proceed . . . ." LSA-C.Cr.P. art. 775; *State v. Bennett*, 341 So.2d 847 (La., 1977).
>
> The trial court concluded that it was possible to proceed with this trial "in the ordinary course," LSA-C.Cr.P. art. 796, because selection of the jury was not complete. The court had directed that a panel of alternate jurors be summoned before Mrs. Perkins became ill. LSA-C.Cr.P. art. 789.

Defendant relies on *State v. Carmouche*, 141 La. 325, 75 So. 68 (1917) and *State v. Hataway*, 144 La. 138, 80 So. 227 (1918). In *Carmouche* and *Hataway*, jury selection had been completed, and the indictment had been read. LSA-C.Cr.P. art. 765. Those trials had gone another step in the normal order.

Absent mandatory grounds for a mistrial, it is the function of the trier of fact to determine whether a trial should continue. Any error in that decision is reversible only when denial of a mistrial results in substantial prejudice to the defendant. *State v. Sepulvado*, 359 So.2d 137 (La., 1978); *State v. Overton*, 337 So.2d 1058 (La., 1976).

Counsel for defendant contends that his defense strategy was hampered by the trial court's ruling because his twelve peremptory challenges had been exhausted. The court minutes reflect that there was one remaining challenge. The trial court granted the defense two additional peremptory challenges to be used for selection of the twelfth juror and two to be used in selection of the two alternates. The defense used three peremptory challenges in the process of selecting the twelfth juror and the two alternates. The defendant's rights were fully protected. No prejudice is discernable.

*Delore*, 381 So.2d at 459-60 (footnotes omitted) (alteration in original).

In *State v. Spencer*, 446 So.2d 1197 (La.1984), the supreme court again confronted the issue of juror dismissal for physical reasons. In this capital case, a juror who was confined to a wheelchair stated that he would only be unable to serve if the housing accommodations did not have accessible restroom facilities. After making inquiry, the judge informed the juror that the hotel could accommodate any special needs. After the sequestered jury arrived at the hotel, it was determined that the bathroom doors were too narrow to accommodate the juror's wheelchair. The trial judge, without informing either the state or defense of the problem, discharged the juror. The supreme court held in *Spencer*, 446 So.2d at 1199:

First, under the circumstances of this case the discharged juror was, because of his handicap, unable to perform his duties as a juror. Although the jury ultimately returned a second degree murder verdict, this was a capital

11

> case in which it was required that each juror be sequestered after he was sworn. Code of Crim.Proc. art. 791(B). The purpose of the sequestration is to insulate the jurors from outside influence or the possibility thereof, even unconscious; and, in capital cases especially, the sequestration is strictly enforced so that, upon a separation of a juror after he is sworn, a rebuttable presumption of misconduct and reversible error arises. *State v. Parker*, 372 So.2d 1037 (La.1979). To move the entire jury to another hotel without any prior arrangements would have been impracticable and disruptive. To separate the handicapped juror from the jury on the chance that he could be housed in another hotel with wider bathroom doors would have invited reversible error. Consequently, although the juror's confinement to a wheel chair may not have rendered him unable to perform his duties in another type of case or in a situation in which more careful prearrangements had been made, in the context of this case, he was not able to perform as a juror.

*See also State v. Womack*, 592 So.2d 872 (La.App. 2 Cir. 1991), *writ denied*, 600 So.2d 675 (La.1992), wherein the trial court's dismissal of a juror who continuously complained of headaches, continuously mopped her brow with a towel, fell asleep several times, and of whom other jurors complained that she was inflaming them by her crying, was affirmed.

The most recent decision of the Louisiana Supreme Court is *State v. Fuller*, 454 So.2d 119, (La.1984). The trial judge disqualified a juror after determining that the juror had violated the sequestration order by going to the bar in the hotel in which the jury was housed. In determining the correctness of the trial court action, the supreme court stated:

> The next morning the judge conducted a hearing and conscientiously examined that juror and the other jurors to determine the extent of the transgression. The juror claimed that the only person with whom he conversed was the barmaid. The other jurors testified that they had not discussed the case with anyone.

> Although the juror denied discussing the case or the fact that he was a juror with the barmaid, there is no doubt that the juror willfully disobeyed the sequestration order and was not "secluded from outside communication".

Confronted with this situation in a capital case (where sequestration is mandatory), the judge chose to replace the transgressing juror with an alternate. Defense counsel objected to this action and moved for a mistrial based on the juror's misconduct.

The trial judge was called upon to decide whether the juror had become disqualified to perform his duties and, if so, what action to take. La.C.Cr.P. Art. 789. The judge acted properly in holding an evidentiary hearing, with all parties present, to determine the existence of a violation of his order, the nature and extent of the violation, and the appropriate solution to the problem.

The juror assured the judge that he did not, while in the bar, compromise his position by discussing the case or his status as a juror. Although a judge under some circumstances may have been satisfied that such a showing overcame the presumption of prejudice flowing from a sequestration violation, the judge in this instance determined that the essential fairness of the proceeding could best be preserved by replacing the juror with the properly qualified and duly selected alternate. Moreover, the judge's decision to replace the juror, rather than to declare a mistrial, was largely justified by the facts that the violation had occurred during the evening recess and that the other jurors had denied that they were exposed to any outside influence possibly resulting from the violation.

The trial court has discretion to utilize the service of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action. Thus, when it was shown that a juror was unable to continue to serve because of the physical disability that was involved in *State v. Spencer*, 446 So.2d 1197 (La.1984), or was "disqualified" from further service because of the blatant display of prejudices and partiality that was involved in *State v. Marshall*, 410 So.2d 1116 (La.1982), the replacement of the juror with the alternate has been approved by this court.

The trial judge in this case acted in a fair and deliberative manner when he decided that the juror's willful violation of the order by going to the motel bar was a sufficient ground to disqualify him from further service. The judge also considered alternative courses of action. Replacing the juror with the alternate under the overall circumstances was a proper exercise of the trial judge's discretion.

*Id*. at 123.

In *State v. Mohamed*, 96-845 (La.App. 5 Cir. 9/17/97), 700 So.2d 881, the court recited a history of cases in which employment problems, although different from the case presented herein, justified replacement of a juror. In that case, a juror expressed his dissatisfaction with having to miss work to serve as a juror, but after a challenge for cause was denied with the trial judge finding that an economic situation "was not sufficient grounds for cause," he was selected to serve. After the juror failed to remain with other jurors during a lunch recess, and continued to complain that the trial was costing him too much money, the trial judge ordered he be replaced, but also ordered that he must remain for the entirety of the trial. In affirming, the court noted:

> Although the Louisiana Code of Criminal Procedure does not provide a definition of "incompetent," the Louisiana Supreme Court interpreted the meaning of "incompetent" in *State v. Cass*, 356 So.2d 396, 397-398, (La.1977). In *Cass*, a juror allegedly fell asleep during testimony and the trial judge summarily ordered the removal of the juror. Prior to leaving the courtroom, the juror twice stated aloud that he had not been sleeping. Holding that the trial judge erred in summarily removing the juror, the Louisiana Supreme Court stated that "incompetent," as used in LSA-C.Cr.P. art. 796, refers to "death, illness, or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed." *Id*. Although this Court has no published opinions discussing this particular article, other appellate courts have interpreted it.
>
> In *State v. Robertson*, 518 So.2d 579, 582-583 (La.App. 1 Cir. 1987), *writ denied*, 523 So.2d 227 (La.1988), a juror failed to return to the courthouse the day after she was selected to serve on the jury because she had learned her employer would not pay her for the days she would spend on jury duty. Following the issuance of a summons, the juror reported back to court. When asked by the prosecutor whether she could be a fair and impartial juror in light of this situation, the juror explained that she could not because her mind would not be on the trial. The First Circuit held that because the juror's answers indicated that she did not wish to serve on the jury and that she would not be paying attention to the trial, the trial judge

14

had no choice but to excuse the juror pursuant to LSA-C.Cr.P. art. 796.

> In *State v. Taylor*, 545 So.2d 1237 (La.App. 2 Cir. 1989), *judgm't amended on other grounds*, 551 So.2d 1332 (La.1989), a juror notified the court that he was losing business due to his inability to work and that this situation was causing him to be distracted from the case. The Second Circuit held that due to the juror's testimony that he was unable to concentrate on the case, the trial judge's ruling was not an abuse of discretion. *See also State v. Wiley*, 513 So.2d 849 (La.App. 2 Cir.1987), *writ denied*, 522 So.2d 1092 (La.1988)(trial judge properly dismissed juror whose decision-making ability was probably impaired and who could not concentrate on the trial because no one was home to take care of her children).

*Id*. at 883.

In *State v. Burns*, 35, 267, p. 7 (La.App. 2 Cir. 10/31/01), 800 So.2d 106, 108 (alteration in original), the court, in reversing a conviction obtained after the trial judge, on his on motion, replaced a juror he had observed to be sleeping, stated, "[a]s noted by the supreme court in *State v. Cass*, *supra* at 397, '[t]he right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. (Citations omitted).'"

This historical retrospective makes definitive that La.Code Crim.P. art. 789 permits replacement of a juror with an alternate juror when the juror is physically unable to serve, or when the juror is found to have become disqualified, or to have either the real or potential for bias in the deliberations. What is not gleaned is whether a juror's personal business or social obligations, of which the trial court is aware prior to his being sworn, renders that juror, after he has heard all of the testimony, and is to be excused just as deliberations are to begin, "unable to perform or disqualified from performing his duties."

Dismissal of a juror under these facts is not a recognized or permissible course of action under La.Code Crim.P. art. 789. Dr. Howell's prior commitment to officiate at a football game rendered him neither "unable to perform," nor "disqualified from performing" his duties. While the trial court's desire to accommodate jurors is commendable, such accommodation should not preempt a defendant's right to be tried by a properly empaneled jury selected by him.

As complained of by Defendant, equally troubling is the manner in which the decision was made to excuse Dr. Howell, and replace him with an alternate. In the previously quoted colloquy from the voir dire proceedings, defense counsel expressed concern over the court's estimation of the length of trial. The court indicated it should be known in time to allow the juror to seek a replacement to officiate at the football game, and then discussed the possibility of replacing him with an alternate. However, there was no definitive ruling by the court at that time to which Defendant could object.

When confronted with having to decide whether to release Dr. Howell, and after defense counsel had objected to his being replaced, not only was a hearing not held to consider the propriety of the juror's replacement, but the matter was apparently argued off of the record during a recess. The cited colloquy of the court's action in replacing Dr. Howell indicates that the court ruled following this off-record discussion.

Defense counsel also contends that it would be a fatal error to discharge a juror in an ex-parte hearing, outside the presence of the Defendant. This principle has been long recognized. In *White*, 153 So.2d at 408-09 (footnotes omitted), the court explained:

> It would appear to us that under the clear language of the pertinent provisions of R.S. 15:362, reflected by the underscored portion hereof appearing in Footnote No. 6,

16

the judge is without authority to excuse a juror and substitute the alternate unless and until a juror dies, is too ill to serve, or there is a Legal cause that renders him incompetent to serve.  Moreover, we think, as was also contended by defense counsel, that the ex parte hearing in the judge's chambers was a clear violation of the well-settled rule universally obtaining that an accused must be present at each and every stage of the trial from arraignment to sentence.  Under this jurisprudence and law it is well established in Louisiana that the absence of the defendant from the courtroom during the questioning, challenging, and/or selecting of a juror as competent to serve has the effect of vitiating the entire proceedings. *State v. Thomas*, 128 La. 813, 55 So. 415; *State v. Futrell*, 159 La. 1093, 106 So. 651; *State v. Layton*, 180 La. 1029, 158 So. 375; and *State v. Peyton*, 193 La. 354, 190 So. 579. See, also, 4 Louisiana Law Review 620 and 12 Louisiana Law Review 178, as well as 1 Marr's Criminal Jurisprudence 407, Section 275.

This being so, once a juror has been qualified as competent to serve and sworn--all in the presence of the defendant--he cannot thereafter be disqualified as incompetent to serve unless the defendant is present.

Subsequently, this rule was codified in La. Code  Crim. P. art. 831, which provides in pertinent part:

A.  Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:

(1) At arraignment;

(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;

(3) At the calling, examination, challenging, empanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;

(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;

(5) In trials by jury, at all proceedings when the jury is present, and in trials without

a jury, at all times when evidence is being adduced; and,

(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.

While any discussion or argument on the discharge of Dr. Howell, out of the presence of Defendant, would constitute reversible error absent exigent circumstances, the record is unclear as to whether such violation occurred, and the minutes are of no assistance. While the judge's comments indicate the intent to discuss this issue off the record, there is nothing in the record to establish that the Defendant was not present during the entirety of any discussions.

There is nothing in the record establishing that the Defendant was not present at any discussion about the discharge of the juror. This issue is best presented in an application for post-conviction relief where a hearing on the issue can be ordered if appropriate.

However, the record makes clear that a hearing to determine whether to discharge Dr. Howell was not conducted. Both counsel made known to the court their opposition to the discharge of the juror. Defense counsel objected to the action of the court, and counsel for the State declined to object, while noting that he would rather not have the juror discharged. In considering the propriety of the discharge of the alleged sleeping juror in *Cass*, 356 So.2d at 398, the court stated:

> Consistent with *State v. Buggage*, *supra*, and *State v. Rounsavall*, *supra*, and applying Art. 789 C.Cr.P. we determine that even if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had defendant and the state been afforded an opportunity to explore on the record the defendant's inability to perform on this account, we would be presented with a substantially different question for review.

18

Under the circumstance present here, the assignment has merit. We hold that the trial judge erred in summarily removing the juror under the circumstances and in the manner which he did, and in refusing defendant's motion for a mistrial. For this reason, we reverse defendant's conviction and sentence and remand the case for a new trial.

In *Spencer*, 446 So.2d 1197, the court recognized that there are acceptable exceptions to the mandate of La.Code Crim.P. art. 831. In discussing the discharge of the wheelchair-bound juror who could not be accommodated by the hotel when neither the defendant nor his counsel was present, the court held:

> Second, Code of Criminal Procedure article 831(3) provides that a defendant charged with a felony shall be present at the calling, examination, challenging, empanelling, and swearing of the jury and "at any subsequent proceedings for the discharge of the jury or a juror." *Id. See State v. White*, 244 La. 585, 153 So.2d 401 (1963). This rule is broader than the defendant's constitutional right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings, *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), see *Snyder v. Massachusetts*, 291 U.S. 97, 106-08, 54 S.Ct. 330, 332-33, 78 L.Ed. 674 (1934); *United States v. Jorgenson*, 451 F.2d 516, 521 (10th Cir. 1971), cert. denied, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972), however, and does not prevent a trial court from acting summarily to dismiss a juror in an emergency unless the defendant can show that he has been prejudiced thereby. Although every effort should be made to afford the defendant and his attorney an opportunity to be present and to be heard before a juror is discharged, situations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel, e.g., if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend. *United States v. Garafolo*, 385 F.2d 200 (1967); vacated on other grounds, 390 U.S. 144, 88 S.Ct. 841, 19 L.Ed.2d 970 (1968); *United States v. Houlihan*, 332 F.2d 8 (2d Cir.1964), cert. denied 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964).
>
> In the present case, the judge's proper respect for the rights and needs of the handicapped juror required him to take immediate action without consulting counsel. The

19

handicapped juror had placed the court and counsel on notice of the risk that he would be unable to serve if the hotel bathroom facilities were inadequate. Accordingly, when it was learned at 6:30 p.m. after the court had recessed for the day, that the handicapped juror who had been sequestered in this capital case was unable to use the toilet facilities in the hotel where the jury was sequestered, the trial judge was presented with an emergency justifying his summary action. In the absence of such an exigency, of course, the judge would have been obliged to conduct a hearing or at least confer with counsel in chambers or by telephone before taking action. However, under exigent circumstances summary action does not constitute error in the absence of a showing of prejudice, and defendant has shown none.

*Id.* at 1199-1200.

In *Fuller*, 454 So.2d 119, the Louisiana Supreme Court again recognized the propriety of holding an evidentiary hearing. This court in a civil context has reviewed much of the jurisprudence cited herein as to both the necessity of holding an evidentiary hearing, and the exceptions thereto. In *Green v. K-Mart*, 01-675, pp. 3-6 (La.App. 3 Cir. 6/18/03), 849 So.2d 814, 819-21, *rev'd, in part, on other grounds*, 03-2495 (La. 5/25/04), 874 So.2d 838 (alterations in original), the court in elaborating on the correctness of its interlocutory ruling on the dismissal of a juror, stated:

While we find that our former ruling denying writs pertaining to juror Williams' dismissal is conclusive, we elaborate on the reasons why we denied writs in the first instance. "Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." La.Code Civ.P. art. 1769(B). On the day the trial court disqualified Williams, it stated its reasons for doing so as follows:

We have a juror, a Mr. Carlton Williams who has not appeared for jury duty this morning. It is now ten minutes to ten. All the jurors were instructed to be here promptly at nine o'clock. The Court wants to note for the record that since the selection of Mr. Williams on Monday that attorneys from both sides have expressed some concern about Mr. Williams not paying attention, perhaps

20

sleeping from time-to-time. The Court has also noted that and had conversations with the attorneys concerning that and expressed the Court's concern at Mr. Williams' lack of attention. He has been late and has in effect disappeared from time to time at recesses causing even more concern for the Court. So, his failure to appear this morning even though we've waited for fifty minutes for him, his failure to appear this morning is no surprise to the Court. For those reasons the Court is going to declare that--a vacancy due to his absence, and will appoint the first alternate juror, Mr. Melancon. . . .

After counsel for K-Mart objected to the appointment of the alternate juror, the trial court went on to say:

I forgot to mention that I personally attempted to call the residence of Mr. Williams immediately before coming into court, that I secured the phone number from a questionnaire that was previously sent to all jurors just to provide their name, address, phone number, and basic information. I phoned that--called that number personally, there was no answer after a number of rings that anyone who would've been there would have heard and would have answered the telephone.

. . . .

Let me state also for the record that since the concerns began with Mr. Williams that the Court has tried to observe him from time-to-time and his actions, and he does appear at most times not to be paying attention. He appears to be looking down at his note pad, but does not appear to be writing anything, although the Court could be misinterpreting that. Nevertheless, it's my view that his absence is indicative of his performance as a juror throughout the trial. . . .

When juror Williams was questioned as to his tardiness, he responded that he was late because he "was watching [his] little brother and we don't have no phone. . . . We don't have no car, no transportation or

21

nothing." K-Mart argues that, if we find that Williams was properly disqualified, we are in effect saying that jurors must be able to afford reliable transportation and have a telephone in order to serve on a jury. We disagree.

While these particular facts have not presented themselves in this court before, our colleagues in the first circuit addressed facts similar to those presented here. In *State v. Williams*, 500 So.2d 811 (La.App. 1 Cir. 1986), court was scheduled to commence at 10:30 a.m., but one juror, Ms. Hatch, was not present at roll call. The bailiff telephoned the Hatch home, but no one answered. At 10:40 a.m., the court ordered that an alternate juror replace Hatch. Thereafter, while routine procedural matters were being handled, but before the commencement of the trial, Hatch arrived. The court ordered her to be jailed for failing to notify the court that she would be late. At that point, Hatch replied that she had car trouble and could not get to a telephone. The court proceeded with the alternate.

The first circuit stated that a "juror may not be discharged unless he is found incompetent to serve because of death, illness, or any other cause which renders a juror unable or disqualified to perform his duty." *Id*. at 814. The court went on to discuss *State v. Cass*, 356 So.2d 396 (La.1977), where the trial court dismissed a juror for sleeping for two to four minutes while testimony was being presented. The supreme court found that this behavior did not constitute cause to discharge the juror and that the trial court erred in failing to allow the defendant an opportunity to explore the juror's inability to perform.

The appellate court then examined the case of *State v. Clay*, 441 So.2d 1227 (La.App. 1 Cir.1983), *writ denied*, 446 So.2d 1213 (La.1984), where the juror was discharged because she called the morning of the second day of trial to say she could not attend due to a family problem. On appeal, the first circuit distinguished *Clay* from *Cass*, because in *Clay*, the juror was unavailable for questioning as to her ability to serve. In *Cass*, the juror was present to be questioned in front of the defendant. Therefore, the finding of the trial court was upheld by the first circuit because it acted in a reasonably prudent manner in replacing the juror.

The appellate court further stated that at the time the trial court was called upon to make a decision whether to replace Hatch with the alternate, she was unavailable, as her whereabouts and reason for absence were unknown; her subsequent arrival was irrelevant. Thus, in accordance

with *Clay*, the appellate court found the trial court acted in a reasonably prudent manner in replacing the juror.

Likewise, we find that the trial court acted in a reasonably prudent manner in replacing Williams, who was fifty minutes late for court, did not telephone to indicate he would be late, was not available at the telephone number he provided to the court, and was not performing his duties as a juror. We agree with the first circuit that an absent and unavailable juror cannot be questioned as to his inability to perform his duties. Williams' eventual appearance was of no moment as the trial court could not predict when he would appear. After making reasonable efforts to contact him and delaying the progress of the trial by fifty minutes, we find the trial court did not abuse its discretion in disqualifying Williams from jury service. This assignment of error is dismissed as being without merit.

The trial court's well-intentioned release of a juror to allow him to fulfill a personal or business obligation deprived the Defendant of his "substantial" right to be tried by a jury selected by him. Further, summarily dismissing the juror without holding an evidentiary hearing, particularly since the juror was available, constitutes reversible error. None of the recognized exigent circumstances justifying summary action by the court was present.

In its brief, the State informs us that the verdict was unanimous, thus implying that the alleged error was harmless. We disagree. In *State v. Cass*, 356 So.2d 396, 397 (La.1977), the Louisiana Supreme Court addressed the application of a harmless error analysis without referencing either the United States or Louisiana Constitution. The court, citing *State v. Rounsavall*, 337 So.2d 190 (La.1976) stated:

> Once a jury has been selected and sworn the accused has a right to have his fate decided by the particular jurors selected to try him. The phrase 'incompetent to serve' embodied in Article 796 refers to death, illness or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed. The right of the accused to have a juror selected by him to try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. *State v. White*,

244 La. 585, 153 So.2d 401 (1963); *State v. Willie*, 130 La. 454, 58 So. 147 (1912).[1]

Moreover, the discharge of a juror for personal or business reasons prior to deliberations, as in this case, is a structural error which "affects the framework within which the trial proceeds, rather than an error in the trial process. It defies harmless error standards and cannot be quantitatively measured." *State v. Jones*, 98-1165 (La.App. 3 Cir. 2/3/99), 734 So.2d 670, 673. *See also*, *State v. Langley*, 04-269 (La.App. 3 Cir. 12/29/04), 896 So.2d 200.

Therefore, this assignment has merit. We reverse the Defendant's convictions for aggravated burglary and simple burglary and remand for a new trial.

## CONCLUSION

Based on the foregoing, we reverse the Defendant's convictions for aggravated burglary and simple burglary and remand to the trial court for a new trial.

**CONVICTIONS REVERSED AND CASE REMANDED FOR A NEW TRIAL**.

---

[1]*State v. Marshall*, 410 So.2d 1116 (La.1982) overruled *State v. Rounsavall. State v. Cass* pre-dated *Marshall*, but continues to be cited as sound jurisprudential authority.