# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-167

**STATE OF LOUISIANA**

**VERSUS**

**DESMOND KEMON ORPHEY**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 14775-17
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**John Foster DeRosier**
**District Attorney**
**Fourteenth Judicial District**
**Elizabeth B. Hollins**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR STATE-APPELLEE:**
    **State of Louisiana**

**Mary Constance Hanes**
**Louisiana Appellate Project**
**P. O. Box 4015**
**New Orleans, LA 70178-4015**
**(504) 866-6652**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Desmond Kemon Orphey**

**PICKETT, Judge.**

## FACTS

Desmond Kemon Orphey was charged by indictment filed on August 3, 2017, with: 1) principal to armed robbery of Clinton Curtice with a firearm, a violation of La.R.S. 14:24, La.R.S. 14:64, and La.R.S. 14:64.3; 2) conspiracy to commit armed robbery of Clinton Curtice with a firearm, a violation of La.R.S. 14:26, La.R.S. 14:64, and La.R.S. 14:64.3; 3) conspiracy to commit armed robbery of Joshua Touchet with a firearm, a violation of La.R.S. 14:26, La.R.S. 14:64, and La.R.S. 14:64.3; and 4) principal to first degree murder of Joshua Touchet, a violation of La.R.S. 14:24 and La.R.S. 14:30. An amended indictment was filed on January 12, 2018, changing the charge in count four to second degree murder, a violation of La.R.S. 14:30.1. The offenses occurred at the Twelve Palms RV Park on Broad Street in Lake Charles.

Trial by jury commenced on June 18, 2019. On June 19, 2019, the defendant was found guilty by unanimous verdict on all four counts. He was sentenced on August 14, 2019, to serve life imprisonment without benefit of probation, parole, or suspension of sentence for second degree murder; thirty years at hard labor without benefit of probation, parole, or suspension of sentence on each count of conspiracy to commit armed robbery with a firearm; and twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence for principal to armed robbery with a firearm. The trial court ordered the sentences be served consecutively.

A "Motion for Appeal" and "Designation of Record on Appeal" were filed on August 23, 2019. The defendant is now before this court asserting his rights were violated when the trial court removed a juror and replaced her with an alternate over an objection by the defense.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent. The Uniform Commitment Order signed by the trial judge does not indicate that the sentence for count one, principal to armed robbery with a firearm, is to be served without benefits. The transcript of sentencing and the minutes of the trial court both indicate that the sentence is to be served without benefit of probation, parole, or suspension of sentence. We order the trial court to file an amended commitment order correcting this error.

## DISCUSSION

In his sole assignment of error, the defendant contends his rights were violated when the trial court removed a juror and replaced her with an alternate over his objection.

On the second day of trial, juror Jacqueline Sharpe notified the bailiff that she knew someone who had entered the courtroom. She identified Ms. Orphey, the defendant's mother. Ms. Sharpe was addressed by the court as follows:

**THE COURT:**

Okay. How do you know them?

**JUROR SHARPE:**

Just the little short lady --
. . . .

**JUROR SHARPE:**

-- she's a cafeteria lunch lady that -- where I work at, the school I work in --

. . . .

**JUROR SHARPE:**

-- Ms. Orphey.

**THE COURT:**

All right.  So is -- the fact that they are here, is that going to prevent you from doing your job?

**JUROR SHARPE:**

It makes me uncomfortable, yes --

. . . .

**JUROR SHARPE:**

-- because I know her.  I mean, she worked with me every day --

. . . .

**JUROR SHARPE:**

-- every day for the last two years.

**THE COURT:**

So did you know the connection --

**JUROR SHARPE:**

No. --

**THE COURT:**

-- before we --

**JUROR SHARPE:**

-- because there's a lot of them.  I asked.  When -- when she first started working there, I used to work at Reynaud, the school --

. . . .

3

**JUROR SHARPE:**

-- before they changed it to the alternative site, I asked her, "Did she know some of the Orpheys that I know," and she said, "No. They were different families."

. . . .

**JUROR SHARPE:**

Her side of the family is from Texas.

**THE COURT:**

All right. So, you know, being uncomfortable is -- is one thing.

**JUROR SHARPE:**

Uh-huh (yes).

**THE COURT:**

And, you know, everyone is uncomfortable because it's a terrible situation.

. . . .

**THE COURT:**

But is it going to prevent you from doing the job that you have to do in this case to -- to make a decision?

**JUROR SHARPE:**

I'm not for sure. I mean, I might have to work with her again next year. It is the law but --

**THE COURT:**

Do you know her relationship to the defendant?

**JUROR SHARPE:**

No, sir.

**THE COURT:**

You assumed there was no relationship, that it was a different set of --

4

**JUROR SHARPE:**

Correct --

**THE COURT:**

--people?

**JUROR SHARPE:**

-- a different set of people.

. . . .

**JUROR SHARPE:**

Because they kept saying his name different.  I don't -- when it was Reynaud, the kids didn't look -- they grew up. And usually someone, when I -- when I see them in the street, they'll -- they'll remember me and then they'll tell me who they are and what class they was in with me --

. . . .

**JUROR SHARPE:**

-- and then that's how I remember them.

. . . .

**MR. MURRAY:**

Ms. Sharpe, we believe that in following the law in this case and what we believe the evidence will show in the end and we'd ask you to return a verdict of guilty, knowing everything that we've talked to in voir dire and talked about in voir dire and that the ultimate punishment in this would be life imprisonment if he were found guilty as charged, would you be able to vote guilty knowing that he'd be going to prison for life and still be able to go and face that lady every day at work?

**JUROR SHARPE:**

It would be hard, yes, sir.  I'm going to tell you the God's honest truth, it would.  I would -- I would feel bad inside knowing that I was part of it.  I would.

. . . .

5

**MR. MURRAY** [Prosecutor]**:**

> Would the thought of having to face her at work every day pop up in your mind in deciding guilt or innocence?

**PROSPECTIVE** [sic] **JUROR SHARPE:**

> It shouldn't, because I have to do what the law asks me to do. It's just the simple fact that after -- afterwards, because I'm here today to do a job, and I will have to go with what I'm listening to from the lady with you and his lawyer, but as far as once I leave from here, once I -- it would -- it would be difficult then, you know.

> . . . .

**MS. STAGG** [Defense counsel]**:**

> . . . I appreciate you're saying it would be difficult, but I would think it is a difficult decision anyway, correct?

**JUROR SHARPE:**

> Correct.

**MS. STAGG:**

> And I do appreciate you just said that you would do what you were required to do by law anyway?

**JUROR SHARPE:**

> Correct.

**MS. STAGG:**

> And you've got the courage to do that?

**JUROR SHARPE:**

> Correct.

The judge subsequently excused Ms. Sharpe, stating: "I'm going to excuse her. I think it's too close a relationship." Defense counsel objected because she felt Sharpe had been rehabilitated.

After a jury has been selected and trial has commenced, double jeopardy attaches. It is at that point that "the accused has a right to have the particular jurors

6

selected to try him and decide his fate, save in cases of death, illness or any other cause which renders a juror unfit or disqualified to perform this duty[.]" *State v. White*, 244 La. 585, 620, 153 So.2d 401, 413 (1963). The defendant's right to have the original twelve jurors selected decide his fate . . . [is] not absolute." *State v. Clay*, 441 So.2d 1227, 1231 (La.App. 1 Cir.1973), *writ denied*, 446 So.2d 1213 (La.1984). "Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties." La.Code Crim.P. art. 789(A). "La.Code Crim.P. art. 789 permits replacement of a juror with an alternate juror when the juror is physically unable to serve, or when the juror is found to have become disqualified, or to have either the real or potential for bias in the deliberations." *State v. Tennors*, 05-538, p. 15 (La.App. 3 Cir. 2/15/06), 923 So.2d 823, 833. "We regard this right of the accused to be a substantial one, the improper deprivation of which is prejudicial. Hence, . . . harmless error, is inapplicable." *White*, 153 So.2d at 413. *See also Tennors*, 923 So.2d at 838.

The defendant argues the trial court erred in removing and replacing Ms. Sharpe because she was neither "unable to perform" nor "disqualified from performing" her duties as a juror. The state responds that the defendant's argument that Ms. Sharpe made no statements that she was biased and the trial court made no findings that she was not impartial is "technically correct." The state argues that the judge did remove the juror because her relationship with Ms. Orphey, who was attending trial, was too close and contends "[t]his implicitly finds that the juror may not be impartial and has the potential for bias."

Whether the trial court erred in removing Juror Sharpe and replacing her with an alternate juror is reviewed under an abuse of discretion standard. The trial court has the discretion to utilize the service of a properly qualified and duly

selected alternate when it determines an empaneled juror is unable to serve for any legal reason. *State v. Fuller*, 454 So.2d 119 (La.1984); *State v. Spencer*, 446 So.2d 1197; *State v. Marshall*, 410 So.2d 1116 (La.1982). As noted above, the trial court has the discretion to remove the juror and replace him or her with an alternate if the court finds the juror has become unqualified because he or she has either a real, or potential for, bias in the deliberations. *Tennors*, 923 So.2d 823.

Juror Sharpe brought to the court's attention that she knew someone who had walked into the courtroom. She worked with the lady she identified. She knew her by name. It is obvious from her dialogue with the court that when she saw the lady she made the connection between the defendant and the woman who worked at her school. When asked by the judge if knowing this lady was going to prevent her from doing her job, her response was, "It make me uncomfortable, yes." When questioned further by the court as to whether this would prevent her from doing her job, she responded that she was not sure. When questioned by the attorneys, she acknowledged it should not keep her from deciding guilt or innocence because the law required it, but expressed how difficult it would be, both during deliberations and afterwards. She ultimately said she would do what the law required.

The trial court is in the unique position of not only hearing the response of the juror in answering the questions, but also being able to observe the manner in which the answer is given, the tone of voice, and the juror's overall demeanor. The trial court listened to and evaluated Ms. Sharpe's responses, both to its questions and the attorneys' questions. This situation is very similar to *State v. Clarkson*, 11-933 (La.App. 3 Cir. 3/7/12), 86 So.3d 804, where the juror did not indicate that he had the ability to be fair and impartial, but indicated he would make an effort to be.

In the matter before us, Juror Sharpe indicated she would do her best to follow the law – as she knew she should – but it is clear her connection with a family member of the defendant troubled her deeply. The trial court listened to her responses, was able to observe her overall demeanor while responding to questions, and determined there was a real potential for bias. We do not find the trial court abused its discretion by removing Juror Sharpe and replacing her with a duly qualified alternate. The defendant's assignment of error lacks merit.

## CONCLUSION

The defendant's conviction is affirmed. The case is remanded for the trial court to amend the commitment order to conform to the sentence imposed in open court.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**